Rob L. Phillips
FisherBroyles, LLP
California Bar Number 175354
145 S. Fairfax Ave., 2nd Floor
Los Angeles, CA 90036
Direct: (949) 290-9631
rob.phillips@fisherbroyles.com

Shawn T. Sheehy
FisherBroyles, LLP
D.C. Bar Number 90002670
*Pro Hac Vice* forthcoming
1200 G Street NW.
Suite 800
Washington, D.C. 20005
Direct: 202-258-0741
shawn.sheehy@fisherbroyles.com

He Xian
FisherBroyles, LLP
Michigan Bar Number P81366
*Pro Hac Vice* forthcoming
400 Renaissance Center, Suite 2600
Detroit, MI 48243
Direct: 678-539-9029
he.xian@fisherbroyles.com
*Counsel to* Ms. Jing Liu

*Attorneys for Plaintiff Jing Liu*

FISHERBROYLES, LLP
145 S. Fairfax, 2nd Floor
Los Angeles, CA 90036
Telephone: (949) 290-9631

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

JING LIU, an individual,

Plaintiff,

v.

JAMES TURCO, an individual, MARGARET CHENG TURCO, an individual, AMERICAN GATEWAY REGIONAL CENTERS, LLC, a California limited liability company, 1875 N. PALM CANYON GATEWAY PARTNERS I, LP,

Case No.:

**COMPLAINT**

JURY TRIAL DEMANDED

FISHERBROYLES, LLP
145 S. Fairfax, 2nd Floor
Los Angeles, CA 90036
Telephone: (949) 290-9631

a California limited partnership, 1875 N. PALM CANYON GATEWAY PARTNERS II, LP, a California limited partnership, JM INVESTMENT GROUP, LLC, a California limited liability company, KRISTI NOEM, Secretary of the Department of the Homeland Security, JOSEPH B. EDLOW, Director of the United States Citizenship and Immigration Services, ALISSA EMMEL, Chief of the Immigrant Investor Program Office United States Citizenship and Immigration Services

Defendants.

## BACKGROUND

1. Ms. Jing Liu believes in America. Born in China and a Chinese national, Ms. Liu has accumulated her wealth as a successful consultant to a real estate investor in China. Accordingly, Ms. Liu predominately speaks Chinese and only knows rudimentary English.
2. Ms. Liu is legally present in the United States on an EB-5 visa. Accordingly, Los Angeles County is now her residence, and she wants to make her residency in the United States permanent.
3. Congress has provided a path for Ms. Liu. In the 1990s, and to stimulate the economy, Congress established a visa program for foreign nationals who wish to help create American jobs. Under the then effective EB-5 visa program, before the EB-5 Reform and Integrity Act of 2022[1], a foreign national must invest between $500,000 and $1,000,000 in

[1] Under the EB-5 Reform and Integrity Act of 2022, minimum investment amounts increased to $800,000 for Targeted Employment Areas (TEAs) and $1,050,000 for non-TEAs projects, effective March 15, 2022. These changes aim to adjust for inflation and encourage development in rural or high-unemployment areas. These amounts are subject to automatic, regular adjustments.

certain commercial projects in a manner where the investment creates at least ten jobs. In exchange, the United States bestows on the foreign national permanent residency.

4. Since its inception more than 30 years ago, unfortunately, the EB-5 visa program has been riddled with fraud and abuse. *See, e.g., Mirror Lake Vill., LLC v. Wolf,* 971 F.3d 373, 378 (D.C. Cir. 2020) (Henderson, J., concurring) ("The EB-5 program is well known for its susceptibility to fraud and abuse.").[2] Defendants Mr. James Turco, Ms. Margaret Cheng Turco (together "Turcos") and their related businesses are the latest iteration of EB-5 regional centers committing fraud.

5. In doing so, Defendants James Turco and Margaret Cheng Turco preyed on Ms. Liu's dreams of becoming a U.S. Permanent Resident.

6. In 2015, Ms. Liu invested $550,000 and later in 2018, she invested an additional $100,000 in Defendant 1875 N. Palm Canyon Gateway Partners I, LP, a California limited Partnership ("Canyon Partners I"). In doing so, she became a limited partner in Canyon Partners I. The General Partner was American Gateway Regional Centers, LLC, ("AGRC"), a California limited liability company and a United States Citizenship and Immigration Service ("USCIS") approved regional center that Mr. Turco and Ms. Turco managed.[3]

[2] *See also* Audrey Singer Camille Galdes, *Improving the EB-5 Investor Visa Program: International Financing for U.S. Regional Economic Development*, Project on State and Metropolitan Innovation, Brookings-Rockefeller at 2, 11 (Feb. 2014) *available at* https://www.brookings.edu/wp-content/uploads/2016/06/eb5_report.pdf (last visited Jan. 30, 2026) (finding that the EB-5 visa program "battles a poor reputation, largely due to high-profile cases of fraud at regional centers that highlight risks and vulnerabilities for immigrant investors and a failure to properly regulate the promotion of the program.").

[3] As detailed below, Mr. and Mrs. Turco were husband and wife at all relevant times and acted in concert through the conduct giving rise to this action.

FISHERBROYLES, LLP
145 S. Fairfax, 2nd Floor
Los Angeles, CA 90036
Telephone: (949) 290-9631

7. The intended purpose of her $650,000 investment was to build and renovate the Infusion Beach and Hotel Club, which included a day club, nightclub, spa, and over 100 hotel rooms in Palm Springs, California. This never happened.

8. Instead, it appears that Ms. Liu's investment was, without her knowledge or consent, funneled from Canyon Partners I's operating accounts to other accounts controlled by the Turcos. Ultimately, the Turco's regional center, AGRC, purchased a multimillion-dollar residential home. Later AGRC deeded the home to the Turcos.

9. Compounding the problem, the Turcos have consistently and continuously refused to send Ms. Liu financial documents and financial statements, including annual reports filed with USCIS, detailing how Canyon Partners I, was using her investment. Ms. Liu is entitled to these documents under both California law and federal law, as well as under the terms of Canyon Partners I's own organizational documents.

10. Ms. Liu now comes to this Court seeking relief. Ms. Liu seeks relief in the form of compensatory and punitive damages, restitution, an accounting, an order to produce the required financial documents, and an order from this Court that Federal Defendants Secretary Noem, Director Edlow, and Ms. Emmel (together "Federal Defendants") debar Defendant AGRC and the Turcos from ever again participating in the EB-5 program.

11. Ms. Liu also asks that this Court order the Federal Defendants to treat Ms. Liu as a "good-faith" investor allowing her to have 180 days to redirect her investment through another regional center so she can maintain her legal status in the United States.

12. Time is of the essence as Ms. Liu's current EB-5 visa expires on March 23, 2026.

FISHERBROYLES, LLP
145 S. Fairfax, 2nd Floor
Los Angeles, CA 90036
Telephone: (949) 290-9631

FISHERBROYLES, LLP
145 S. Fairfax, 2nd Floor
Los Angeles, CA 90036
Telephone: (949) 290-9631

## JURISDICTION

13. This Court has subject matter jurisdiction under 28 U.S.C. § 1331 since this case raises a federal question under the statutes of the United States. Ms. Liu brings a claim arising under the Exchange Act, 15 U.S.C. §§78j(b) and 78t(a), and Rule 10b-5 promulgated thereunder by the SEC, 17 C.F.R. §240.10b-5. This Court, therefore, also has jurisdiction under Section 27 of the Exchange Act, 15 U.S.C. §78aa. Ms. Liu also brings claims under the Administrative Procedure Act because a United States officer or employee has failed to sanction and debar Defendant AGRC and the Turcos within a reasonable time and is contrary to law. 5 U.S.C. § 706(1-2); *id*. § 555(b); *id*. § 702; *see also id*. § 551(13) (defining agency action to include an agency's failure to act). Accordingly, this Court has subject matter jurisdiction. 28 U.S.C. § 1331.

14. This Court also has jurisdiction since Ms. Liu seeks an order from this Court compelling an officer of the United States to perform a duty owed to Ms. Liu. 28 U.S.C. § 1361; 5 U.S.C. § 701; *Norton v. S. Utah Wilderness Alliance*, 542 U.S. 55, 63-64 (2004) (stating that Section 706(1) "empowers a court only to compel an agency to perform a ministerial or non-discretionary act, or to take action upon a matter, without directing *how* it shall act," the APA "carried forward the traditional practice prior to its passage when judicial review was achieved through . . . principally writs of mandamus.").

15. This Court also has supplemental jurisdiction over Ms. Liu's state law claims as these state law claims involving fraud and abuse are substantially related to the federal fraud claims requiring Federal Defendants to sanction and debar AGRC and the Turcos that these claims form the same case or controversy. 28 U.S.C. § 1367(a).

16. Venue is proper in this district because at least one of the Defendants resides within this district. Additionally, a substantial part of the acts and omissions at issue in this case occurred within this district. Lastly, the subscription agreement that gives rise to this lawsuit requires that lawsuits arising from the agreement must be brought in any court of competent jurisdiction within Los Angeles County. *See* Ex. A at ¶ 9 (Immigrant Investor Subscription Agreement); 28 U.S.C. § 1391(b)(1-2).

**PARTIES**

17. Plaintiff, Jing Liu, is a Chinese citizen who is lawfully present in the United States on an EB-5 investor visa. Ms. Liu resides in Los Angeles County, California. Ms. Liu invested a total of $650,000 in Defendant Canyon Partners I. She is a limited partner in Canyon Partners I.

18. Defendant, James Turco, is the co-founder and President of AGRC, the company that serves as the general partner of Canyon Partners 1. He is also the husband of Defendant, Margaret Cheng Turco.

19. Defendant, Margaret Cheng Turco ("Ms. Turco") is the co-founder and Vice-President of AGRC. Originally from Taipei, Tawain, she has "deep family ties to Shanghai and Beijing" and "frequently provides real estate consulting services for Asian immigrants." Ex Q at 1. She is the wife of Defendant James Turco.

20. Defendant, AGRC, is a limited liability company organized under the laws of California in 2010. USCIS approved AGRC as an EB-5 regional center Los Angeles, Orange, Riverside, and San Bernardino counties. AGRC is approved to work in the following industries: accommodations, food services, professional offices, banking and insurance, retail trade,

FISHERBROYLES, LLP
145 S. Fairfax, 2nd Floor
Los Angeles, CA 90036
Telephone: (949) 290-9631

health club, assisted living, medical offices, and construction. As stated above, AGRC was and is the General Partner of Canyon Partners I at all relevant times.

21. Defendant, Canyon Partners I is a limited partnership organized under the laws of California on January 21, 2014. Defendant, James Turco, ("Mr. Turco") signed the Certificate of Limited Partnership in his capacity as President of AGRC and is listed as Canyon Partners I's registered agent at all relevant times. *See* Ex. B. According to the Confidential Private Offering Memorandum, Canyon Partners I was founded to raise investor money to then provide a loan to Defendant 1875 N. Palm Canyon Partners II, LLC to "acquire, renovate, construct and operate Infusion Beach and Hotel, a hotel, music lounge, and beach club project located in Palm Springs, California." Ex. C at 4. (Confidential Private Offering Memorandum) (hereinafter "Memorandum").

22. Defendant 1875 N. Palm Canyon Partners II, LLC (hereinafter "Canyon Partners II"), is a limited liability company organized under the laws of California on January 30, 2014. James Turco is listed as the registered agent of Canyon Partners II. Defendant James Turco signed the Articles of Organization as "Jim Turco, Manager, American Gateway Regional Centers." Additionally, Canyon Partners I and Canyon Partners II share the same address at 2 Park Plaza, Suite 840. Ex. D. Canyon Partners II is described as the Borrower in the Memorandum. That Memorandum states that Canyon Partners II was formed "for the specific purpose of acquiring, developing and operating the Project." Ex. C at 9. The managing members of Canyon Partners II are JM International Group, LLC and 6770, LLC. JMIG is owned by the Turcos. 6770, LLC is owned by Eugene Mui. Ex. C at 9. Upon information and belief, Mr. Mui was replaced by Ms. Turco after Mr. Mui's departure in 2016. Ex. C at 9.

FISHERBROYLES, LLP
145 S. Fairfax, 2nd Floor
Los Angeles, CA 90036
Telephone: (949) 290-9631

23. Thus, Defendant James Turco effectively controls both the lender Canyon Partners I and the borrower Canyon Partners II, by serving as principal for both entities. The Memorandum expressly admitted this fact which constitutes a direct conflict of interest. Ex. C at 21.

24. Defendant, JM Investment Group, LLC is a California Limited Liability Company with Mr. and Ms. Turco serving as its managers.

25. Defendant, Kristi Noem, is the Secretary of the Department of Homeland Security. She is sued in her official capacity only.

26. Defendant, Joseph B. Edlow, is the Director of the United States Citizenship and Immigration Services. He is sued in his official capacity only. Additionally, Defendant, Alissa Emmel, is the head of the Immigrant Investor Program at the United States Citizenship and Immigration Services. Ms. Emmel oversees USCIS's compliance with EB-5 related regulations. Ms. Emmel also oversees the adjudication of all EB-5 related matters, including the debarment of EB-5 regional centers. Ms. Emmel is sued in her official capacity only.

**<u>STATEMENT OF FACTS</u>**

**A. <u>The Creation of American Gateway Regional Center</u>**

27. AGRC was founded in 2010 and, in July of 2011, USCIS designated AGRC as a regional center within the Immigrant Investor Pilot Program. Exs. E and F (AGRC's Articles of Organization and the approval letter from USCIS dated July 19, 2011). Accordingly, the purpose of AGRC is to pool investor funds from foreign nationals interested in obtaining EB-5 visas.

28. USCIS approved AGRC to work on new commercial enterprises in:

FISHERBROYLES, LLP
145 S. Fairfax, 2nd Floor
Los Angeles, CA 90036
Telephone: (949) 290-9631

A. Accommodations;

B. Food Services;

C. Professional Offices;

D. Banking and Insurance;

E. Retail Trade;

F. Health Club;

G. Assisted Living;

H. Medical Offices; and

I. Construction.

Ex. F.

29. AGRC's managing members are Defendants James Turco and Margaret Cheng Turco. Ex. G at 6-8. (AGRC Operating Agreement).

**B. <u>The Infusion Beach and Hotel Project</u>**

30. Mr. Rosas met Mr. Turco and Ms. Turco in or around June of 2013. Mr. Rosas was an executive who ran the operations of Fusion Hotel and the Infusion Lounge. Both properties were located in San Francisco, California. Mr. Rosas also managed other hotels in San Francisco.

31. Both Mr. Rosas and Mr. Mui approached the Turcos about expanding the Infusion brand by creating another hotel in the Los Angeles and Palm Springs areas.

32. Mr. Rosas's concept for the hotel was to include a spa, restaurant, and entertainment similar to Las Vegas's day club and nightclubs pools with DJs.

33. In or around August of 2013, Mr. Rosas, through a real estate broker, found a hotel located at 1875 N. Palm Canyon in Palm Springs, California.

FISHERBROYLES, LLP
145 S. Fairfax, 2nd Floor
Los Angeles, CA 90036
Telephone: (949) 290-9631

34. In the fall of 2013, the owners of Canyon Partners II decided that the Turcos were responsible for financing the project. Mr. Mui would negotiate for the Infusion license and provide CPA services to Canyon Partners II. Two of the members of Baby Rhino I, Chad Pradmore and Josh Kientz, would handle technology issues for Canyon Partners II.

35. Lastly, Mr. Rosas, would act as President and direct the hotel's operations, development, and construction. The owners of Canyon Partners II agreed to Mr. Rosas's role because he had—at that time—ten years experience in the hotel industry. This experience included running nine hotels, the two Infusion properties in San Francisco and one Infusion Lounge in Los Angeles.

36. With the roles determined, the owners of Canyon Partners II moved to acquire the property.

## C. <u>The Creation of 1875 N. Palm Canyon Gateway Partners I, LP and 1875 N. Palm Canyon Partners II, LLC.</u>

37. Canyon Partners I, was organized on January 21, 2014 and the company received its EIN on May 9, 2014. Exs. B and H (Canyon Partners I's Articles of Organization and its EIN).

38. Canyon Partners II was formed on January 30, 2014. The Memorandum describes Canyon Partners II as the "borrower." Ex. D.

39. AGRC serves as the general partner to Canyon Partners I. As general partner, AGRC's duties include maintaining regulatory compliance and ensuring that the Infusion Beach and Hotel project satisfies USCIS's requirements.

40. In collaboration with AGRC, Canyon Partners I was to pool investor funding for the Infusion Beach and Hotel project. Then, Canyon Partners I was to loan money to Canyon Partners II. Canyon Partners II was to acquire and develop the property where Infusion Beach and Hotel would be located. Ex. C at 11-12.

FISHERBROYLES, LLP
145 S. Fairfax, 2nd Floor
Los Angeles, CA 90036
Telephone: (949) 290-9631

41. Canyon Partners II's managing members include (1) JM Investment Group, an organization controlled by Defendants Mr. Turco and Ms. Turco; (2) Baby Rhino I, LLC, a limited liability company; and (3) 6770, LLC, which was managed by Eugene Mui. Ex. I at 6-7 (Canyon Partners II' Operating Agreement).

42. Importantly, although the Memorandum did identify Mr. Mui and Mr. Turco as principals involved in the project, the Memorandum failed to mention Christopher Rosas's—an officer of Canyon Partners II—or Baby Rhino I, LLC's involvement.

## D. Early Concerns with Defendants Jim and Margaret Turco's Cash Flow and Financial Practices.

43. Towards the end of 2013, Mr. Rosas and the individual who represented the hotel at 1875 N. Palm Canyon, agreed to a purchase and sale agreement. This agreement permitted the limited partnership to make payments over the course of eight months to complete the purchase of the hotel. This was intended to provide time for the Turcos to raise capital from EB-5 investors. *See* Ex. J (Mr. Rosas's Affidavit).

44. The seller of the hotel included $300,000 in seller financing to close the purchase of the hotel.

45. By early 2014, however, the Turcos had not provided any financing to close on the hotel. Mr. Rosas personally guaranteed a loan through his company, DKR Partners, to pay the pre-closing non-refundable deposits to purchase the hotel. By May of 2014, this loan had increased to over $250,000. In all, Mr. Rosas's company paid $300,000 in total for the project.

46. Still, the Turcos, in charge of financing the project, did not provide Mr. Rosas with any evidence that they had obtained a loan. Nor did the Turcos provide any financing towards the closing of the hotel.

FISHERBROYLES, LLP
145 S. Fairfax, 2nd Floor
Los Angeles, CA 90036
Telephone: (949) 290-9631

47. In or around July 2014, close to the closing date of August 1, 2014. Mr. Turco asked Mr. Rosas to have their real estate broker give his entire commission on the sale of the property as a loan to help finalize the sale of the property. Mr. Turco further asked Mr. Rosas to personally guarantee the loan. Because he believed in the project, Mr. Rosas complied. Ex. J at ¶ 21.

48. Finally, on August 1, 2014, Canyon Partners II closed on the hotel project and paid $8,045,000. Ex. K (Buyer's Final Settlement Statement).

49. $4,400,000 was funded through a promissory note issued by Canyon Partners II in favor of Private Mortgage Fund, LLC. Ex. L (Promissory Note Loan to Private Mortgage Fund).

50. The promissory note was dated July 30, 2014. Both Mr. Turco and Ms. Turco signed the promissory note in their capacities as co-managers of the JM Investment Group, one of Canyon Partners II's partners.

51. The annual interest rate on the note is 10.25%, well above the conventional interest rate for commercial loans which was between 4% and 5.5% in July 2014. The promissory note encumbered the 1875 North Palm Canyon Drive property. Ex. L at 1.

52. On the very same day, Global Student Housing, LLC, an entity where JM Investment Group had a substantial (35%) stake, issued a promissory note in the amount of $4,100,000 to the benefit of Private Mortgage Fund, LLC. This money was used to purchase a different hotel, the Stanton Inn and Suites, located at 7161 West Katella Avenue in Stanton, California. The promissory note encumbered the Stanton Inn and Suites property. The purchase at $4,100,000 resulted in a refund to Global Student Housing, LLC in the amount of $2,015,989.49. Ex. M at 6.

FISHERBROYLES, LLP
145 S. Fairfax, 2nd Floor
Los Angeles, CA 90036
Telephone: (949) 290-9631

53. At the closing for the 1875 North Palm Canyon property, a deposit was made in the amount of $2,028,635.63 from the same escrow company that closed on the West Katella Avenue property for Global Student Housing. This should have been marked as loan to 1875 North Canyon Partners II and not a deposit. Ex. K.

54. Canyon Partners II then issued yet another promissory note. This time the note was issued to the benefit of Global Student Housing LLC. The amount of the note was $2,550,000. Mr. Rosas, at the Turcos direction, signed this note. The annual interest rate on this note was 12%, again, double to even triple the conventional loan rate of 4% to 5.5%. Even riskier bridge loans in 2014 ranged between 8% and 12%. Ex. M.

55. Ms. Turco told Mr. Rosas that the loan only required interest payments and deferred payments on the principal. Mr. Rosas thought this reasonable because it freed up much needed cash.

56. This turned out to be untrue. Canyon Partners II was required to make both principal and interest payments to Global Student Housing LLC at a rate of approximately $35,000 a month. This note also encumbered the 1875 North Palm Canyon Drive property. Ex. M at 8.

57. There was urgency in preparing this note. In October of 2014, Ms. Turco emailed Mr. Rosas explaining that the note's interest should be set at a 12% interest rate so that Global Student Housing, LLC could "make a little bit money of 12%-10.25%=1.75% which makesee [sic] sense to USCIS." Ex. N at 16 Mr. Pradmore's Affidavit. Ms. Turco further told Mr. Rosas that "This needs to be done before USCIS checks on us." Ex. N at 17.

FISHERBROYLES, LLP
145 S. Fairfax, 2nd Floor
Los Angeles, CA 90036
Telephone: (949) 290-9631

58. In summary, approximately $6,428,635 of the $8,045,000 purchase price for the hotel was paid based on promissory notes secured by properties owned by the Turcos. Approximately, $1,400,000 million was paid through Canyon Partners II.

59. Indeed, Canyon Partners II suffered significant cash-flow problems, a problem exacerbated by the requirement to repay two loans exceeding $6 million. In fact, in late December of 2014, Mr. Rosas wired money from his own business to the hotel to cover payroll expenses.

60. By the end of 2015, Mr. Rosas stopped working for Canyon Partners II.

61. Additionally, by July of 2015, the hotel was closed. Fencing ringed the property. No construction work had begun.

62. By 2016, Mr. Mui also left the project. This denied the Turcos the ability to use the Infusion brand, a known brand. The Turcos were thus required to rebrand the project to the Tova Hotel and Beach Club.

63. Ms. Liu was unaware of (a) Mr. Rosas's possible fraud; (b) Canyon Partners II's significant cash-flow problems; (c) that the 1875 North Canyon property was twice encumbered on promissory notes; (d) that above market interest rates that benefitted another project that the Turcos controlled; and (e) that the project had lost the licensing rights to the Infusion brand. All of these developments materially increased the risk associated with Ms. Liu's investment.

64. From May 2015 through the end of 2016, Ms. Liu was never provided any financial documents or annual statements that the Turcos are required to file with USCIS and provide to Ms. Liu.

**E. <u>Conversion of Funds by Rosas</u>**

65. Defendant James Turco uncovered what he described as fraud on the part of Mr. Rosas.

FISHERBROYLES, LLP
145 S. Fairfax, 2nd Floor
Los Angeles, CA 90036
Telephone: (949) 290-9631

FISHERBROYLES, LLP
145 S. Fairfax, 2nd Floor
Los Angeles, CA 90036
Telephone: (949) 290-9631

66. Between April and July of 2014, Mr. Rosas took more than $350,000 in Canyon Partner II's funds and moved that money into an account that was under his control. Ex. O at 123 (Mr. Turco's Affidavit). Included in this transfer was nearly $28,000 in purported reimbursement for his personal travel to Europe. Ex. O at ¶¶ 23-24. Again, according to Mr. Turco, Mr. Rosas made these transfers without permission and without informing anyone. Ex. O at ¶ 23.

67. On August 4, 2014, Mr. Rosas made a promissory note where he was the borrower and Canyon Partners II was the lender. Canyon Partners II lent Mr. Rosas $347,500. Apparently, this was done without Mr. Turco's knowledge or consent. It is unclear if this money was repaid. Ex. O at ¶ 27. This too was an unauthorized self-dealing transaction that breached his fiduciary duties and constitutes a misappropriation of Canyon Partners II's assets.

68. Later, on January 8, 2015, Mr. Rosas secretly transferred $250,000 from Canyon Partners II's bank account to his personal account without permission and without authorization. This constituted unauthorized self-dealing and misappropriation of company assets in breach of his fiduciary duties. Ex. O at 123. These unauthorized transfers further breached his fiduciary duties and constitutes additional acts of conversion of self-dealing.

**F. <u>AGRC Purchases a Private Residence and Later Grants the Deed to the Turcos.</u>**

69. By 2018, the hotel was closed and there was significant litigation over the property involving allegations of fraud. Ms. Turco was searching for financial assistance from investors. In April of 2018, Ms. Turco asked Ms. Liu to make a $100,000 investment. But this loan was not for Canyon Partners I or Canyon Partners II but for JM International

Group, the partnership completely controlled by Mr. Turco and Ms. Turco. JMIG is also a partner in Canyon Partners II.

70. Despite this lack of funding for the hotel project, in September 2018, AGRC, upon information and belief, used investor funds to purchase a private residence located in Newport Beach, California. The bases for this belief are the title records that show AGRC acquiring the deed to this property in September 2018 and later transferring the deed to the Turcos.

71. AGRC paid approximately $2 million to purchase this private residence.

72. This was not a legitimate business expense because USCIS never approved AGRC to purchase and redevelop residential property.

73. Fourteen months later, AGRC conveyed the private residence to the Turcos personally. This conveyance was made after the Turcos were forced to close the hotel in 2015 and while the Turcos were searching for investors to begin developing the hotel.

74. In April of 2018, Ms. Turco contacted Ms. Liu requesting that an additional investment of $100,000 was required to preserve the project. As a result of these representations, Ms. Liu invested an additional $100,000 into JM International Group, the managing partner of Canyon Partners II.

**G. <u>The Confidential Private Offering Memorandum</u>**

75. Ms. Liu received the Confidential Private Offering Memorandum (Memorandum) in March of 2014. Ms. Liu's first immigration attorney, Jenny Wang of Chang & Cote LLP, personally handed the Memorandum to Ms. Liu.

FISHERBROYLES, LLP
145 S. Fairfax, 2nd Floor
Los Angeles, CA 90036
Telephone: (949) 290-9631

76. The Memorandum explained that the project would involve the conversion of a hotel property located at 1875 N. Palm Canyon in Palm Springs, California. Involved in the project are AGRC, Canyon Partners I, and Canyon Partners II. Ex. C.

77. The Memorandum also stated that James Turco was involved in the project. Also involved was Eugene Mui who was to be involved in obtaining the licensing agreement for the Infusion brand.

78. By the time Ms. Liu made her $550,000 investment in May of 2015, several things occurred that materially changed the security of her investment in the project.

79. The Memorandum did not, for example, state that the project had already encountered significant financial problems. These included Mr. Rosas's concerns that Mr. Turco violated his fiduciary duty to Canyon Partners II. According to Mr. Rosas, in violating his fiduciary duty to Canyon Partners II, this caused a significant cash flow problem.

80. For Mr. Turco's part, he, allegedly, uncovered a scheme where Mr. Rosas defrauded Canyon Partners II for approximately $1 million. According to Mr. Turco, this led to a significant cash-flow problem.

81. None of this was ever disclosed to Ms. Liu. Additionally, Mr. Rosas's name appears nowhere in the Memorandum, despite his role as President.

82. Nor was it disclosed to Ms. Liu that Mr. Mui had already left the company, along with his ability to license Infusion to the hotel project. The Memorandum describes the "Infusion" branding of the pool as the "highlight" of the hotel project.

83. Nor was it disclosed to Ms. Liu that there were major construction delays due to Canyon Partners I and II's significant cash flow problems.

84. Additionally, the Memorandum does not disclose:

FISHERBROYLES, LLP
145 S. Fairfax, 2nd Floor
Los Angeles, CA 90036
Telephone: (949) 290-9631

**a.** That the hotel was purchased nearly a year earlier with two loans that encumbered the property; that the loan amounts constituted nearly 75% of the total purchase price while funds from EB-5 investors constituted approximately 12% of the total purchase price. This contradicted the Memorandum's stated goal of raising $17 million from EB-5 investors to pay for a $22 million project, or 77% of the project;

**b.** That Canyon Partners II was required to pay back both loans, including principal and interest at a rate of $35,000 a month. This is a material fact making the investment riskier;

**c.** That there was significant financial malfeasance on the part of Christopher Rosas where he, without authorization from the managers of Canyon Partners II, converted approximately $950,000 of company funds allegedly for his own personal use;

**d.** That Christopher Rosas was no longer part of Canyon Partners II. Or, when he was part of the project, that he supposedly was to bring his extensive knowledge of the hotel and club industry to the project;

**e.** There was a significant cash flow problem; and

**f.** That the hotel was in danger of closing.

85. Despite all of these fraudulent statements and fraudulent omissions of material facts, the Memorandum informed Ms. Liu that approximately 444 jobs would be created by the Infusion Beach and Hotel project.

86. These omissions were material because these actions made Ms. Liu's investment significantly more risky and less stable.

FISHERBROYLES, LLP
145 S. Fairfax, 2nd Floor
Los Angeles, CA 90036
Telephone: (949) 290-9631

87. Additionally, the Defendants knowingly omitted these significant financial problems, before Ms. Liu made her investment. These included the items identified above as well as the requirement that the Turcos rebrand the hotel as the TOVA Hotel and Beach Club due to the loss of the licensing for Infusion.

**H. <u>Ms. Liu Makes her Investment in Canyon Partners I, LP.</u>**

88. On May 19, 2015, Ms. Liu invested $550,000 in Canyon Partners I. Ms. Liu's investment was supposed to be pooled with other investor funds that were meant to acquire, renovate, construct, and operate the Infusion Beach and Hotel in Palm Springs, California. The estimated cost for the project was $22 million. The plan was to raise $17 million from 34 foreign national investors who were seeking EB-5 visas.

89. The investment was located in a targeted employment area. Under the EB-5 visa program, a foreign investor need only invest $500,000 if the investment is for projects in a targeted employment area. Exs. A and D.

90. The project required acquisition of the property, the renovation of four buildings, and the construction of a new building with an 8,000 square foot pool area. Ultimately, the Infusion Beach and Hotel project was an 80,220 square foot property that included 112 guest rooms, restaurant, Infusion Lounge and Infusion Beach club.

91. The Infusion Beach and Hotel was projected to create approximately 444 jobs.

92. In April of 2018, Ms. Turco stated that additional investment was needed urgently. Ms. Turco personally asked Ms. Liu for an additional investment of $100,000.

93. Ms. Turco did not, however, disclose to Ms. Liu the concerns that Mr. Rosas may have committed fraud on the company. Nor did Ms. Turco disclose to Ms. Liu that the project

FISHERBROYLES, LLP
145 S. Fairfax, 2nd Floor
Los Angeles, CA 90036
Telephone: (949) 290-9631

had already lost the rights to the Infusion brand because Mr. Mui was no longer part of the project.

94. Based on these fraudulent misrepresentations and omissions, Ms. Liu then invested an additional $100,000 in JM International Group, one of the partnerships managing Canyon Partners II.

95. Later, in April of 2020, Ms. Liu received an email from Ms. Turco informing the investors that the need to obtain a loan was urgent. To obtain a loan, however, Ms. Turco and Canyon Partners I needed to raise $1,000,000 from investors.

96. In doing so, however, Ms. Turco failed to disclose to Ms. Liu any of the above material facts, including the lawsuits from 2018 containing numerous allegations of fraud, the loss of the Infusion brand, that Mr. Mui was no longer a part of the project, and that no one on the management team had any experience in developing hotels.

97. The sole financial document Ms. Liu received in ten years as an investor in Canyon Partners I was her 2023 Schedule K-1 tax return. She received this K-1 tax return on July 12, 2024, more than nine years after her initial investment.

98. This tax return shows that on both January 1, 2023 and on December 31, 2023, Ms. Liu's partnership account had $499,499 in the account. Ex. R.

99. This seems unrealistic given that the hotel was lost in July of 2015 due to cash flow problems two months after Ms. Liu's $550,000; the urgent need for additional investor funds in 2018 where Ms. Liu invested an additional $100,000 not in Canyon Partners I or II but in JM International Group; and in 2020 when Canyon Partners II filed for bankruptcy. Three years after the project failed, Non-Federal Defendants defrauded Ms. Liu and

FISHERBROYLES, LLP
145 S. Fairfax, 2nd Floor
Los Angeles, CA 90036
Telephone: (949) 290-9631

submitted to her a tax document showing that Ms. Liu's operating account has $499,499 in it.

100. Instead, upon information and belief, the Turcos moved money from accounts they controlled into Ms. Liu's operating account at the right moment to be captured on the K-1 tax return.

101. Non-Federal Defendants' fraudulent acts are ongoing, persistent, and active to the present day.

## CLAIMS

### Claim I
### Violations of 15 U.S.C. §§78j(b) and 17 C.F.R. §240.10b-5
### Against Defendants James Turco, Margaret Cheng Turco, American Gateway Regional Centers, LLC; 1875 N. Palm Canyon Gateway Partners I, LP; 1875 N. Palm Cayon Partners II, LLC

102. Plaintiff, Ms. Liu incorporates by reference each and every allegation set forth in all preceding paragraphs as if fully stated herein.

103. It is unlawful for the Turcos and the corporate Defendants to use any instrumentality of interstate commerce to:

a. use any device to defraud;

b. To make any "untrue statement of a material fact or to omit to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading;" or

c. To engage in any act that operates as a fraud on any person in connection with the purchase of a security.

17 C.F.R. § 240.10b-5; *see also* 15 U.S.C. 78j(b).

FISHERBROYLES, LLP
145 S. Fairfax, 2nd Floor
Los Angeles, CA 90036
Telephone: (949) 290-9631

104. The Turcos, in their capacities as managing members of JM Investment Group, AGRC, and as executives at Canyon Partners II and as General Partner of Canyon Partners 1, made the following false statements of material fact, and omitted the following material facts from the Confidential Private Placement Memorandum and from Ms. Liu prior to Ms. Liu making her $550,000 investment in 2015 and prior to Ms. Liu making her additional $100,000 in 2018.

**A. <u>Materially False Statement of Fact: Private Placement Memorandum of 2014 States that Limited Partners Will Receive Annual Financial Statements and K-1 Statements.</u>**

105. The Memorandum states that limited partners, like Ms. Liu, "will receive annual financial statements and K-1 statements reflecting their allocable share of the Partnership's profits and losses." Ex D. at 6.

106. When Ms. Liu made her $550,000 investment on May 19, 2015, upon information and belief, Mr. Turco and Ms. Turco knew this statement was false. They never intended to provide financial statements to Ms. Liu or the other limited partners.

107. The basis for this belief is that when Ms. Liu has asked for financial statements, the Turcos never sent Ms. Liu the requested documents.

108. Ms. Liu is not alone on this point. Instead, and in further basis for Ms. Liu's belief it is the Turcos' practice to refuse to provide financial documents to their partners. In the case styled *JM Investment Group, LLC, et al. v. Baby Rhino I, LLC*, No. 30-2016-00888936 (Sup. Ct. Cal. June 23, 2017), Chad Pradmore, then operations counsel for Canyon Partners II and a member of Baby Rhino I, LLC, one of the partners in Canyon Partners II, submitted an affidavit dated June 23, 2017. Ex. N. This affidavit painstakingly details Mr. Pradmore's attempts to obtain Canyon Partners II's financial documents from the Turcos. Ex. N at ¶¶

FISHERBROYLES, LLP
145 S. Fairfax, 2nd Floor
Los Angeles, CA 90036
Telephone: (949) 290-9631

11, 14-21. Mr. Pradmore was concerned that under Mr. Turco's leadership, Canyon Partners II was "continually cash-poor, which effectively prevented it from being able to do the contemplated renovations and development that the Company had always intended to do and which our investors were relying on the Company to do." Ex. N at ¶ 6. Ultimately, after the passage of 551 days, JM Investment Group, through counsel, disseminated 86 pages of financial information which constituted an incomplete set of financial documents. Ex. N at ¶ 21.

109. Accordingly, when the Memorandum said that Canyon Partners I's limited partners would receive annual financial statements and K-1 tax returns, the Turcos knew this was false.

110. Additionally, since 2015, Ms. Liu has only received one K-1 statement. This was in 2023 and that statement showed that there was $499,499 in her partnership operating account. Ex. R.

111. The Turcos never updated the statements made in the Memorandum to say that financial statements and K-1 tax return would not be provided.

112. In 2018, when Ms. Turco asked Ms. Liu for an additional $100,000 investment, Ms. Turco did not update the statement made in the Memorandum or otherwise disclose to Ms. Liu that financial documents would not be provided. Instead, Ms. Turco let Ms. Liu believe that she was entitled to annual financial statements and K-1 tax returns.

113. Then, when Ms. Liu asked for annual financial statements and her K-1 tax return, the Turcos, through telephone calls and electronic communications, told Ms. Liu that (1) she was not entitled to the financial documents; (2) that the documents would be provided to her for a fee; and/or (3) that other documents, such as promotional materials, would

FISHERBROYLES, LLP
145 S. Fairfax, 2nd Floor
Los Angeles, CA 90036
Telephone: (949) 290-9631

satisfy the request for financial documents. The Turcos knew these statements were false and contrary to the Memorandum.

114. Had Ms. Liu known that the Turcos would never provide her with annual financial statements and would rarely provide her with a K-1 tax return, she would not have invested in Canyon Partners I. Instead, when deciding to invest $650,000 in Canyon Partners II, Ms. Liu relied on the statement in the Memorandum that she would be entitled to and receive annual financial statements and K-1 tax returns.

115. Because Ms. Liu was unable to access financial statements and tax returns, she was unaware of how the Turcos were spending her money and managing the company. The Memorandum does state that Canyon Partners I's limited partners had policy making authority. The lack of financial documents prevented Ms. Liu from diligently overseeing company management. Accordingly, she was unable to see that the Turcos were mismanaging the Canyon Partners II. Ms. Liu was also unable to see the Turcos moving money from different accounts that the Turcos controlled or had access to. Ms. Liu was also unable to see that Mr. Rosas was moving significant amounts of money from Canyon Partners II's bank account to his own personal accounts. With access to the financial documents, she could have effectively exercised her policymaking authority and limited voting rights. Ex. C at 6, 20.

116. By not providing the annual financial statements from the inception of the relationship and to the present, the Turcos were able to obfuscate and hide the financial health of Canyon Partners II from the limited partners in Canyon Partners I. Accordingly, the Turcos false statement that limited partners would receive annual statements and K-1 tax returns caused Ms. Liu to lose her $650,000 investment.

FISHERBROYLES, LLP
145 S. Fairfax, 2nd Floor
Los Angeles, CA 90036
Telephone: (949) 290-9631

FISHERBROYLES, LLP
145 S. Fairfax, 2nd Floor
Los Angeles, CA 90036
Telephone: (949) 290-9631

**B. Material Omission of Fact: Private Placement Memorandum of 2014 Fails to Mention a Second Promissory Note that also Encumbered the 1875 North Palm Canyon Gateway Hotel Property.**

117. The Memorandum states that there exists a $4.4 million senior loan to Canyon Partners II. This senior loan is secured by a first deed of trust on the hotel property.

118. A material fact omitted from the Memorandum is that on August 1, 2014, Canyon Partners II executed a second promissory note in the amount of $2.55 million.[4] This note also encumbered the hotel property. Ex. M at 1. Under this second promissory note, Canyon Partners II was obligated to pay $35,000 a month to Global Student Housing, a company in which the Turcos held a substantial interest and where the Turcos exercised control. Ex. Ex. M at 8. This promissory note included an above-market rate of 12% interest. Ex. M at 1.

119. The Memorandum was not updated to include this second promissory note.

120. By August of 2014, approximately ten months before Ms. Liu invested $550,000 in Canyon Partners I, the hotel property already had over $6 million in encumbrances on the property.

121. Ms. Liu was not told of this prior to making her $550,000 investment on May 19, 2015, and it still has not been disclosed to her, despite ongoing obligations to do so.

122. Ms. Liu was not told of this prior to making her $100,000 additional investment in 2018, and it still has not been disclosed to her, despite ongoing obligations to do so.

123. This omission was material because Ms. Liu would not have invested in the company had she known that there were already two secured loans on the hotel property

[4] Though the promissory note is dated in December of 2014, the loan origination document says that the loan originated on August 1, 2014 with the first payment made the day before, and the first monthly payment made on the same day. *Compare* Ex. N at 1 *with* Ex. N at 8.

that amounted to $6,950,000 on a hotel that was purchased for $8,045,000 or 86.3% of the property's purchase price. Ex. O at ¶ 10 (Mr. Turco's affidavit). This is especially true when the promissory note required Canyon Partners II to pay $35,000 a month prior to hotel construction operations even beginning. Lastly, Ms. Liu would not have invested in Canyon Partners I had she known that the monthly $35,000 payments on the second secured loan benefited an entity within which the Turcos held substantial financial interests.

124. Knowing all of the information identified in paragraph 122 would have altered how Ms. Liu evaluated the Memorandum's promise of returns on her investment. Knowing the information identified in paragraph 122 would have also altered how Ms. Liu evaluated the claims that 443 jobs would be created when two secured loans were required to be paid back. Knowing the information identified in paragraph 122 would have also altered how Ms. Liu evaluated the Memorandum's promise that Canyon Partners II would begin repaying the Canyon Partner I's loan in 5 years given that second promissory note required monthly payments of $35,000 over the course of six years. Knowing the information identified in paragraph 122 would have altered how Ms. Liu evaluated the Memorandum's projection that total revenues in the next five years were expected to exceed $17 million.

125. Omitting this information and refusing to provide financial records to the present, caused Ms. Liu's financial loss. As detailed in the affidavits by Christopher Rosas and Chad Pradmore, the second promissory note caused a significant cash flow problem as early as 2014 in no small part because the loan was well above market rates causing Cayon Partners to overpay on interest. The cash flow problem prevented Canyon Partners II from beginning much needed renovations at the hotel and making payroll. The cash-flow

FISHERBROYLES, LLP
145 S. Fairfax, 2nd Floor
Los Angeles, CA 90036
Telephone: (949) 290-9631

problem also led to the closure of the hotel on July 15, 2015. Ex. N at ¶ 6 (Mr. Pradmore's Affidavit); Ex. J at ¶¶ 25, 40-42 (Mr. Rosas's affidavit); Ex. O at ¶ 31 (Mr. Turco's affidavit) (agreeing that the hotel was closed due to a cash-flow problem but blaming Rosas for that problem). This was unknown to Ms. Liu at the time.

126. The Turcos as officers of AGRC, Canyon Partners I's General Partners, were under an obligation to update the Memorandum with this information because the hotel property became encumbered for a second time making repayment of the Canyon Partners I loan less likely and reducing the likelihood of paying the startup costs for the project.

127. Furthermore, the Turcos were required to update the Memorandum and inform Ms. Liu because of the inherent conflict of interest involved in the transaction; the Turcos were obligating Canyon Partners II to repay a loan on terms that were favorable and beneficial to the Turcos and unfavorable to Canyon Partners I and Canyon Partners II.

128. Lastly the Turcos were required to update the Memorandum because the Memorandum stated that the project will be financed by the proceeds of the senior $4.4 million loan that is secured by the property, the loan from Canyon Partners I, and by contributions from the other partners. By the time Ms. Liu invested in Canyon Partners I, this was no longer true. The project was then being financed by a second loan, also secured by the hotel project. This was a material omission because it showed that investor financing was not forthcoming.

### C. **Material Omission Of Fact: The Memorandum Does Not Mention Christopher Rosas Serving as President of the Hotel Project; that Baby Rhino I was a Partner in Canyon Partners II; and the Turcos Neglect to Inform Ms. Liu of Mr. Rosas's Theft Prior to her $100,000 investment.**

129. Another material fact omitted from the Memorandum is any mention of Christopher Rosas serving as the President of the Infusion Beach and Hotel project. Given Mr. Rosas's

FISHERBROYLES, LLP
145 S. Fairfax, 2nd Floor
Los Angeles, CA 90036
Telephone: (949) 290-9631

experience building the Infusion brand in San Francisco, it is curious that his name is not mentioned.

130. Also unmentioned in the Memorandum is that Baby Rhino I, LLC was a partner in Canyon Partners II. The Baby Rhino I, LLC partners were providing technological assistance and legal assistance.

131. Worse, however, is that by 2018 when Ms. Liu made her $100,000 investment, the Turcos failed to inform Ms. Liu that the partners of Canyon Partners II had already sued each other over fraud. In particular, Mr. Turco, in a sworn affidavit accused Mr. Rosas of moving Canyon Partner II funds into his personal bank account. Mr. Turco further stated that Mr. Rosas's actions caused Canyon Partners II to suffer a significant cash-flow problem. Yet no one informed Ms. Liu of this material development at this time, and still to the present have not disclosed this information to Ms. Liu.

132. Nor did anyone provide Ms. Liu with the annual financial statements or her K-1 statements. When Ms. Liu asked—either telephonically or through WeChat—the Turcos did not provide those documents to her. This is important because Ms. Liu otherwise would have seen for herself that Canyon Partners II was suffering a significant cash-flow problem.

133. Not knowing that in 2015 and 2016, Canyon Partners II experienced a significant cash-flow problem due to fraud caused Ms. Liu's loss. She never would have invested her money into Canyon Partners I if she knew that Canyon Partners II experienced fraud. Instead, she relied on the belief that everything was fine at Canyon Partners II and she made her investment.

### D. Material Omission Of Fact: The Memorandum does not Mention, and the Turcos do not Disclose to Ms. Liu, that Mr. Mui left the Project in 2016.

FISHERBROYLES, LLP
145 S. Fairfax, 2nd Floor
Los Angeles, CA 90036
Telephone: (949) 290-9631

134. Another material fact omitted from the Memorandum and from Ms. Liu prior to her 2018 investment of an additional $100,000 is that Mr. Mui left the company in March of 2016. This deprived the project of the "Infusion" trademark which the Memorandum describes as the "highlight" of hotel project. Ex. C at 7.

135. Ms. Lui relied on the Memorandum from its issuance to the present that the project was part of the Infusion brand. Losing that known brand made the project more risky.

136. The Turcos, in their capacity as managers of the General Partner of Canyon Partners I and managing parters in Canyon Partners II, were obligated to inform Ms. Liu that the highlight of the hotel project, the "Infusion Beach Club and Hotel" no longer existed because Mr. Mui left the project and took the rights to the Infusion brand with him. This was not disclosed to Ms. Liu and it still has not been disclosed to Ms. Liu.

137. When Ms. Turco asked Ms. Liu for the additional $100,000 investment in 2018, both Mr. and Ms. Turco knew that Mr. Mui had left Canyon Partners II two years earlier and prevented the Turcos from using the Infusion brand.

138. Not knowing that the project lost a brand that is well known in the San Francisco area caused Mr. Liu to lose her $100,000 investment. Without the brand name, the investment became more risky and less stable.

139. Non-Federal Defendants used email and the electronic messenger service WeChat to send messages to Ms. Liu that were false and intended to defraud Ms. Liu.

140. Non-Federal Defendants either knew or acted recklessly when they were omitting material information from Ms. Liu. Non-Federal Defendants also either knew or acted recklessly when they were making false statements to Ms. Liu.

FISHERBROYLES, LLP
145 S. Fairfax, 2nd Floor
Los Angeles, CA 90036
Telephone: (949) 290-9631

141. Ms. Liu relied on these false material statements and material omissions in deciding to invest $650,000 in Canyon Partners I.

142. As a result of these false material statements and material omissions, Ms. Liu lost her $650,000 investment and is now on the verge of losing her EB-5 visa.

**Claim II**
**Breach of Fiduciary Duty**
**Against Defendants AGRC, JM Investments, Canyon Partners I, Canyon Partners II, James Turco, and Margaret Cheng Turco**

143. Plaintiff, Ms. Liu incorporates by reference each and every allegation set forth in all preceding paragraphs as if fully stated herein.

144. Mr. Turco and Ms. Turco are the managing members of AGRC, which is the general partner of Canyon Partners I. Accordingly, they owe the limited partners of Canyon Partners I, including Ms. Liu, fiduciary duties of loyalty and care. *See* Cal. Corp. Code § 15904.08(b). The fiduciary duty imposes an obligation on Mr. Turco and Ms. Turco to avoid self-dealing where the Turcos act on behalf of a party having an interest adverse to or in competition with Canyon Partners I. Additionally, the fiduciary duty imposes an obligation on the Turcos to avoid intentional misconduct against Canyon Partners I. Moreover, the fiduciary duty imposes on the Turcos an obligation to account for any services provided and expenses incurred on behalf of Canyon Partners I. Lastly, the fiduciary duty imposes on the Turcos an obligation to act on behalf of the partnership in good faith and fair dealing. These duties are imposed by statute and are not waivable in the Memorandum or in a partnership agreement. *See* Cal. Corp. Code § 15901.10(5) (stating that a partnership cannot eliminate duty of loyalty in a partnership agreement).

145. The Turcos violated their fiduciary obligations.

FISHERBROYLES, LLP
145 S. Fairfax, 2nd Floor
Los Angeles, CA 90036
Telephone: (949) 290-9631

146. First, the Turcos violated their fiduciary obligations by refusing to provide Ms. Liu any of the financial documents that she requested, including but not limited to, tax returns, financial statements, and annual statements filed with Homeland Security and USCIS. Ms. Liu has requested financial documents regularly and consistently since 2015 and she has not received these documents. Most recently, on September 23, 2025, she requested documentation regarding her investment and was told that she would need to pay "hundreds of thousands of dollars" for that information.

147. Second, in September 2018, AGRC, upon information and belief, used investor funds to purchase a home located in Newport Beach, California. AGRC paid approximately $2 million to purchase this home. Fourteen months later, AGRC granted the residential deed to the Turcos personally. The Turcos concealed this personal benefit from Ms. Liu.

148. This transfer of the deed to the Turcos personally occurred while the Turcos were searching for investors to begin developing the hotel. The Turcos, as officials at AGRC, the general partner to Canyon Partners I, owed a duty to Ms. Liu to account for how AGRC was spending investor funds. The Turcos also owed a duty of good faith and fair dealing to Ms. Liu to act in the best interests of Canyon Partners I's limited partners. Buying a residential personal residence and later deeding that home to the Turcos personally is not acting in the best interests of Ms. Liu. This is especially true because Homeland Security and USCIS did not approve AGRC for investing in residential properties.

149. Third, the Turcos failed to disclose to Ms. Liu that the hotel had closed and that key partners had left the project, including Mr. Mui who owned the license to the Infusion brand. And still, without disclosing, Ms. Turco asked Ms. Liu to invest more of her money.

FISHERBROYLES, LLP
145 S. Fairfax, 2nd Floor
Los Angeles, CA 90036
Telephone: (949) 290-9631

150. Fourth, the Turcos arranged for Global Student Housing, an entity where the Turcos have a substantial financial interest, to provide a $2.55 million loan to Canyon Partners II. The terms of the loan required Canyon Partners II to pay approximately $35,000 a month with a 12% interest rate, an interest rate that was higher than the market rate at the time. Ms. Turco admitted that this was done so that Global Student Housing could make a little bit of money. Ex. N at 16. This loan also encumbered the 1875 N. Palm property, making the investment more risky and less likely to succeed. Ex. M at 1. This violated the Fiduciary Duty because the Turcos were acting on behalf of two organizations involved in the same transaction where the organizations were either in competition with each other or had interests adverse to each other.

151. Fifth, and finally, the Turcos failed to disclose, and still have not disclosed, to Ms. Liu that there was significant litigation concerning fraud at Canyon Partners II.

152. All of these incidents violated the fiduciary duty that the Turcos, AGRC, Canyon Partners I, and Canyon Partners II, owed to Ms. Liu. *See* Cal. Corp. Code § 15904.08(b).

**Claim III**
**Fraud In The Inducement**
**Against Defendants AGRC, JM Investments, Canyon Partners I, Canyon Partners II, James Turco, and Margaret Cheng Turco**

153. Plaintiff, Ms. Liu incorporates by reference each and every allegation set forth in all preceding paragraphs as if fully stated herein.

154. The Turcos, in their position as officers of the Canyon Partners I's General Partner AGRC, knowingly concealed, and continue to conceal, the fact that by the time Ms. Lui invested $550,000 in Canyon Partners I, the hotel property had two loans that encumbered the hotel property and amounted to more than $6.5 million. Ms. Liu relied on the Memorandum's representation that there was only one loan that was secured and senior to

FISHERBROYLES, LLP
145 S. Fairfax, 2nd Floor
Los Angeles, CA 90036
Telephone: (949) 290-9631

FISHERBROYLES, LLP
145 S. Fairfax, 2nd Floor
Los Angeles, CA 90036
Telephone: (949) 290-9631

Canyon Partners I's limited partners' investments. Ms. Liu also relied on the Memorandum's representation that the project would largely be financed by investor money.

155. The second promissory note that encumbered the hotel property occurred in August of 2014, approximately ten months prior to Ms. Liu's investment in May of 2015. The Turcos knew the Memorandum's assertion of one senior secured loan was false.

156. The Turcos concealed, and continue to conceal, this material fact from Ms. Liu.

157. The Turcos concealed this material fact from Ms. Liu with the intent to induce Ms. Liu to invest in the hotel project. As Mr. Rosas affirms, the Turcos were having difficulty obtaining investors and were increasingly cash poor. In fact, the hotel closed a mere two months after Ms. Liu invested.

158. Had Ms. Liu known that there was a second secured loan on the hotel property, particularly one that benefitted a company where the Turcos had a substantial interest, Ms. Liu would not have made the investment.

159. Instead, Ms. Liu invested a total of $650,000 into the Infusion hotel project without knowing that there were two secured loans on the Infusion hotel project before the project even started.

**Claim IV**
**Fraud**
**Against Defendants AGRC, JM Investments, Canyon Partners I, Canyon Partners II, James Turco, and Margaret Cheng Turco**

160. Plaintiff, Ms. Liu incorporates by reference each and every allegation set forth in all preceding paragraphs as if fully stated herein.

161. Ms. Liu alleges that the same statements and omissions identified in Paragraphs 105, 117-19, 129-32, and 134 form the basis for Ms. Liu's fraud allegations.

162. The Turcos, as officers of AGRC served as the General Partner of Canyon Partners I. AGRC, therefore, owed a fiduciary duty to the limited partners of Canyon Partners I.

163. The Turcos had exclusive knowledge of the following facts that Ms. Liu did not know:

a. That Mr. Mui departed Canyon Partners II in March of 2016 depriving Canyon Partners II of access to the Infusion brand.

b. That there was a severe cash shortage caused either by fraud committed by another partner, Christopher Rosas, or due to sizable monthly loan payments to another company in which the Turcos had an undisclosed significant financial interest.

c. That by July 2015, the hotel closed due to the significant cash-flow problem.

d. That there was a second secured loan on the hotel property where the loan payments were $35,000 a month, with an above market 12% interest rate, that benefited the Turcos through another entity within which they had a substantial financial interest;

164. The Turcos concealed, and continue to conceal, these facts from Ms. Liu. In particular, Ms. Liu requested financial documents on several occasions and the Turcos never provided these documents. Even when counsel to Ms. Liu asked for the financial documents, the Turcos continued to refuse.

165. The Turcos also concealed these facts by not updating the Memorandum from its issuance to the present to disclose that Mr. Mui had departed the project and with it his Infusion brand; that there was a second secured loan on the hotel property; and that the hotel had closed due to significant financial stress.

FISHERBROYLES, LLP
145 S. Fairfax, 2nd Floor
Los Angeles, CA 90036
Telephone: (949) 290-9631

FISHERBROYLES, LLP
145 S. Fairfax, 2nd Floor
Los Angeles, CA 90036
Telephone: (949) 290-9631

166. The Memorandum did reveal that there was one secured loan. But approximately 10 months prior to Ms. Liu making her investment, there was a second secured loan on the hotel property. Ms. Liu relied upon the Memorandum's ongoing representations that there was only one secured loan when she made her investment.

167. The Memorandum represented that Mr. Mui was a partner in the hotel project. He departed in 2016. The Turcos did not inform Ms. Liu of this development prior to her making an additional investment of $100,000 in 2018.

168. The Turcos did not inform Ms. Liu that within two months of her making her investment, the hotel closed.

169. The Memorandum states that investor funds and loans would be used to purchase the hotel property and then to develop it into the Infusion Beach Club and Hotel.

170. But three years later, when the hotel was closed and in financial trouble, AGRC purchased a residential home for over $2 million. This purchase was not in an approved category for AGRC when Homeland Security and USCIS approved AGRC as a regional center. This purchase could not have furthered the benefits of investors.

171. The Turcos concealed, and continue to conceal, this purchase from Ms. Liu.

172. Ms. Liu relied on the Memorandum's statement that her investment would be solely used for the development of the Infusion Hotel. The Turcos placed that statement in the Memorandum and concealed the purchase of a residential home from Ms. Liu to induce her to make the investment and continuing investing.

173. The personal benefit to the purchase of the residential purchase is demonstrated by the deeds transferring the property from AGRC to the Turcos.

174. The Turcos concealed, and continue to conceal, this personal benefit from Ms. Liu.

175. The hotel that Global Student Housing was supposed to develop into student dormitories never happened.

**Claim V**
**Violation of California's Uniformed Limited Partnership Act**
**Against Defendants AGRC, JM Investments, Canyon Partners I, Canyon Partners II, James Turco, and Margaret Cheng Turco**

176. Plaintiff, Ms. Liu incorporates by reference each and every allegation set forth in all preceding paragraphs as if fully stated herein.

177. California law requires that general partners give access to financial and tax documents to the partnership's limited partners. In fact, with ten days notice, partners are entitled by law to access the partnership's financial statements and tax returns. Cal. Corp. Code § 15903.04(a); *id.*§ 15901.11(d),(f). The partnership agreement cannot limit Ms. Liu's access to these documents. *Id*. § 15901.10.

178. In fact, Section 5 of the partnership agreement requires that Mr. Turco provide all documents to Ms. Liu that pertain to her investment and are reasonably necessary to Ms. Liu. Ex. P at 6.

179. Since 2015, Ms. Liu has regularly and consistently made ongoing requests for financial documents and employment reports from Ms. Turco. The most recent time Ms. Liu asked for these documents was during a telephone call on September 23, 2025. In response, Ms. Cheng Turco told Ms. Liu that if she wanted an employment report, Ms. Liu would need to pay Ms. Turco "tens of thousands of dollars."

180. Even when counsel to Ms. Liu requested financial documents on January 14, 2026, Mr. Turco and Ms. Turco refused to provide the requested documents. To date, Mr. Turco and Ms. Turco have not provided any financial statements, bank ledgers, or tax returns, or

FISHERBROYLES, LLP
145 S. Fairfax, 2nd Floor
Los Angeles, CA 90036
Telephone: (949) 290-9631

the annual reports submitted to USCIS among other financial documents, despite their ongoing obligations to do so.

181. Neither the Memorandum, the Partnership Agreement, nor the Investment Subscription permits Ms. Turco to charge a fee for documents that Ms. Liu is entitled to.

**Claim VI**
**Violation of the Administrative Procedure Act: Failure to File Annual Statements with Homeland Security and USCIS: Against Federal Defendants**

182. Plaintiff, Ms. Liu incorporates by reference each and every allegation set forth in all preceding paragraphs as if fully stated herein.

183. The Administrative Procedure Act (APA) allows persons who suffer legal wrong or are adversely affected by agency action—or inaction—to obtain judicial review. 5 U.S.C. § 702; *see also id.* § 551(13) (defining "agency action" to include inaction).

184. The APA authorizes this Court to compel agency action that the agency has unlawfully withheld. 5 U.S.C. § 706(1).

185. The APA also authorizes this Court to hold unlawful those agency actions that constitute an abuse of discretion and without observance of procedure required by law. 5 U.S.C. § 706(2)(A) and (D).

186. Congress requires that Federal Defendants, Kristi Noem, Joseph Edlow, and Alissa Emmel, debar and terminate regional centers that:

a. Fail to pay annual assessments; and

b. Under certain circumstances, fail to file annual reports;

187. AGRC is required to submit financial documents to USCIS on an annual basis. 8 U.S.C. 1153(b)(2)(G)(i).

FISHERBROYLES, LLP
145 S. Fairfax, 2nd Floor
Los Angeles, CA 90036
Telephone: (949) 290-9631

FISHERBROYLES, LLP
145 S. Fairfax, 2nd Floor
Los Angeles, CA 90036
Telephone: (949) 290-9631

188. Included in these disclosures is a description of all litigation and bankruptcy proceedings that involved AGRC, Canyon Partners I, LP, and Canyon Partners II, LLC. 8 U.S.C. § 1153(b)(2)(G)(iv).

189. Additionally, these annual disclosures to Federal Defendants must also include an accounting of all individual investor capital invested in AGRC, Canyon Partners I, LP, and Canyon Partners II, LLC. 8 U.S.C. § 1153(b)(2)(G)(vi). Additionally, these disclosures must provide a description of how investor capital "is being used to execute each capital investment project…". Furthermore, these filings must provide evidence that "100 percent of the capital…has been committed to each capital investment project." *Id.* § 1153(b)(2)(G)(vi)(bb-cc).

190. Upon information and belief, Non-Federal Defendants never made these disclosures. On multiple occasions, over the course of several years, Ms. Liu has requested that the Turcos provide these disclosures made to USCIS. To date, the Turcos have never provided Ms. Liu with the annual statements provided to Federal Defendants, or any other financial document. Additionally, the Turcos never provided a complete set of financial documents to their partners Christopher Rosas and Chad Pradmore. The Turcos have a history of shielding their documents.

191. If Non-Federal Defendants did file the required documents, then, upon information and belief, those documents omitted details about litigation, including *JM Investment Group, LLC, et al v. Baby Rhino I, LLC, et al*., No. 30-2016-00888936 (Sup. Ct. Cal. Nov. 23, 2016) (Orange County) where Mr. Turco alleged that Mr. Rosas committed fraud and Mr. Rosas alleges that the Turcos committed fraud. Importantly, this litigation matter ended in a confidential settlement.

192. Furthermore, upon information and belief, Non-Federal Defendants never disclosed on their annual statement litigation entitled *Ung Ti Lam and Phung Nguyen v. Jim Turco, Margaret Turco, and American Gateway Regional Center, et al.*, No. 20ST-cv-19369 (Cal. Sup. Ct. May 21, 2020) (Los Angeles County). This lawsuit also contained allegations of fraud.

193. Lastly, upon information and belief, Non-Federal Defendants never disclosed on their annual statement that in October of 2020, Canyon Partners II filed for bankruptcy in the Central District of California. *See 1875 N. Palm Canyon Partners II*, LLC 20-bk-12856 (C.D. Cal. Oct. 11, 2020).

194. USCIS is required to sanction those entities that fail to file annual statements or file annual statements that contain material false statements. 8 U.S.C. § 1153(b)(2)(G)(iii)(I)(aa).

195. Given the scale of the fraud and the number of years the fraud has gone on, this Court should order USCIS to impose a permanent bar on AGRC, Canyon Partners I, Canyon Partners II, and the Turcos from ever participating in the EB-5 investor program again.

196. Federal law requires that Federal Defendants sanction EB-5 regional centers who fail to file their annual statements. These sanctions include debarment 8 U.S.C. § 1153(b)(5)(G)(iii)(I-II).

197. Federal Defendants, upon information and belief, have not issued any sanctions to AGRC, JM Investments, Canyon Partners I or Canyon Partners II. This is in contravention of the statutory mandate that Federal Defendants debar AGRC for failure to file annual statements and for failure to pay fees.

FISHERBROYLES, LLP
145 S. Fairfax, 2nd Floor
Los Angeles, CA 90036
Telephone: (949) 290-9631

198. Accordingly, this Court should declare that Federal Defendants violated federal law because USCIS failed to sanction and or debar AGRC for failing to file annual statements.

199. Additionally, this Court should order that Federal Defendants debar AGRC and prohibit AGRC, Mr. Turco, Ms. Turco, Defendant JM Investments, Defendant Canyon Partners I, and Canyon Partners II, from ever participating in the EB-5 investor program again. 5 U.S.C. 706(1).

## Claim VII
## Violation of the Administrative Procedure Act: Failure to pay Annual Fees and Debarment: Against Federal Defendants.

200. Plaintiff, Ms. Liu incorporates by reference each and every allegation set forth in all preceding paragraphs as if fully stated herein.

201. Federal law requires that Federal Defendants debar EB-5 regional centers that fail to pay their annual fees within 90 days of its due date. 8 U.S.C. § 1153(b)(5)(J)(iv)(II).

202. Defendants, AGRC, JM Investments, Canyon Partners I, and Canyon Partners II, upon information and belief, failed to pay the required annual fees. This is demonstrated through these Defendants continuous cash-flow problem, failed investment projects, and Canyon Partners II's bankruptcy filing in 2020.

203. Accordingly, this Court should order that Federal Defendants debar AGRC and prohibit AGRC, Mr. Turco, Ms. Turco, Defendant JM Investments, Defendant Canyon Partners I, and Canyon Partners II, from ever participating in the EB-5 investor program again. 5 U.S.C. § 706(1-2).

## Claim VIII
## Violation of the Administrative Procedure Act: Against Federal Defendants

204. Plaintiff, Ms. Liu incorporates by reference each and every allegation set forth in all preceding paragraphs as if fully stated herein.

FISHERBROYLES, LLP
145 S. Fairfax, 2nd Floor
Los Angeles, CA 90036
Telephone: (949) 290-9631

FISHERBROYLES, LLP
145 S. Fairfax, 2nd Floor
Los Angeles, CA 90036
Telephone: (949) 290-9631

205. Under the APA, this Court is empowered to compel Federal Defendants to act when they have unlawfully withheld action or unreasonably delayed action. 5 U.S.C. § 706(1).

206. Ms. Liu is considered a good-faith investor. She was unaware of the fraud, abuse and malfeasance committed by Non-Federal Defendants. She never received financial statements, annual statements, tax returns—with the exception of the 2023 tax return—, or an updated Memorandum. Accordingly, she is statutorily entitled to broad protections due to AGRC's noncompliance. 8 U.S.C. § 1153(b)(5)(M).

207. Federal Defendants have a statutorily imposed obligation to "terminate the designation" of EB-5 Regional Centers if the regional center fails to pay its annual fee within 90 days of the due date. 8 U.S.C. § 1153(b)(5)(J)(iv)(II).

208. Federal Defendants are statutorily obligated to timely inform Ms. Liu that an EB-5 regional center has been debarred. Additionally, Federal Defendants are statutorily obligated to afford Ms. Liu 180 days to reassociate with another regional center to maintain her eligibility under the EB-5 program. 8 U.S.C. § 1153(b)(5)(M)(i)-(iii).

209. Due to Federal Defendants' failure to debar and terminate AGRC, JM Investments, Canyon Partners I and Canyon Partners II, and their failure to subsequently notify Ms. Liu, Federal Defendants failed to provide Ms. Liu with an opportunity to affiliate with another regional center to maintain her eligibility under the EB-5 program.

210. Between 2014 and the present, AGRC, JM Investments, Canyon Partners I, and Canyon Partners II, should have filed between 11 and 12 annual statements. Upon information and belief, these Defendants failed to file at least one annual statement.

211. Within 90 days of failing to file the annual statement, Federal Defendants were statutorily required to debar these Defendants. Because AGRC is still a recognized regional center, Federal Defendants have failed to act.

212. This Court should declare Federal Defendants acted unlawfully. This Court should order Federal Defendants to provide the requisite protections as a Good Faith investor to Ms. Liu, providing her 180 days to associate with another regional center so that she can maintain her legal status in the United States under the EB-5 program.

## PRAYER FOR RELIEF

WHEREFORE, Ms. Liu respectfully requests that this Court:

### Claim I

A. Award Ms. Liu actual damages in an amount to be determined at trial;

B. Award Ms. Liu compensatory damages in an amount to be determined at trial;

C. Declare, pursuant to 28 U.S.C. § 2201, that Mr. James Turco violated 15 U.S.C. § 78j(b) and 17 C.F.R. § 240.10b-5;

D. Declare, pursuant to 28 U.S.C. § 2201, that Ms. Turco violated 15 U.S.C. § 78j(b) and 17 C.F.R. § 240.10b-5;

### Claims II and V

E. Declare, pursuant to 28 U.S.C. § 2201, that Mr. Turco breached his fiduciary duty to Ms. Liu in violation of Cal. Corp. Code § 15904.08(b).

F. Declare, pursuant to 28 U.S.C. § 2201, that Ms. Turco breached her fiduciary duty to Ms. Liu in violation of Cal. Corp. Code § 15904.08(b).

G. Declare, pursuant to 28 U.S.C. § 2201, that both Mr. Turco and Ms. Turco violated the California Uniformed Limited Partnership Act.

FISHERBROYLES, LLP
145 S. Fairfax, 2nd Floor
Los Angeles, CA 90036
Telephone: (949) 290-9631

H. Award Ms. Liu actual damages in an amount to be determined at trial;

I. Award Ms. Liu compensatory damages in an amount to be determined at trial;

J. Aware Ms. Liu punitive damages in an amount to be determined at trial;

K. Enter an order requiring all Non-Federal Defendants to provide all financial documents that they are required to provide to Ms. Liu pursuant to federal law and California's Uniformed Limited Partnership Act, including but not limited to:

a. Financial statements;

b. Bank statements;

c. Ledgers;

d. Annual statements submitted to USCIS; and

e. Tax returns.

**Claims III and IV**

L. Declare, pursuant to 28 U.S.C. § 2201, that Mr. Turco committed fraud and fraud in the inducement against Ms. Liu;

M. Declare, pursuant to 28 U.S.C. § 2201, that Ms. Turco committed fraud and fraud in the inducement against Ms. Liu

N. Award Ms. Liu actual damages in an amount to be determined at trial;

O. Award Ms. Liu compensatory damages in an amount to be determined at trial;

P. Aware Ms. Liu punitive damages in an amount to be determined at trial;

**Claims VI, VII, VIII**

Q. Declare, pursuant to 28 U.S.C. § 2201, that Mr. Turco and Ms. Turco violated the Immigration and Nationalization Act by not filing the requisite annual reports with Homeland Security;

FISHERBROYLES, LLP
145 S. Fairfax, 2nd Floor
Los Angeles, CA 90036
Telephone: (949) 290-9631

R. Declare, pursuant to 28 U.S.C. § 2201, that Mr. Turco and Ms. Turco violated the Immigration and Nationalization Act by not paying the required annual fees.

S. Declare, pursuant to 28 U.S.C. § 2201, that Mr. Turco and Ms. Turco violated the Immigration and Nationalization Act by not providing Ms. Liu with the annual statements.

T. Order Secretary Noem, Director Edlow, and Defendant Emmel, their subordinates, successors, agents, and assigns to debar and terminate American Gateway Regional Center, Canyon Partners I, Canyon Partners II, JM Investments, Mr. Turco and Ms. Turco;

U. Declare, pursuant to 28 U.S.C. § 2201, that Ms. Liu is a good-faith investor pursuant to 8 U.S.C. 1153(b)(5)(M);

V. Order Secretary Noem, Director Edlow, and Defendant Emmel, their subordinates, successors, agents, and assigns to afford Ms. Liu all the benefits of a good-faith investor and to allow Ms. Liu 180 days to reinvest in another regional center so that she can maintain legal status in the United States;

W. Grant any reasonable attorneys' fees; and

X. Grant any other relief that this Court deems just and proper.

## JURY DEMAND

Plaintiff hereby demands trial by jury on all triable issues.

FISHERBROYLES, LLP
145 S. Fairfax, 2nd Floor
Los Angeles, CA 90036
Telephone: (949) 290-9631

Dated: February 17, 2025

Respectfully submitted,

Rob L. Phillips
FisherBroyles, LLP
California Bar Number 175354
145 S. Fairfax Ave., 2nd Floor
Los Angeles, CA 90036
Direct: (949) 290-9631
rob.phillips@fisherbroyles.com

Shawn T. Sheehy
FisherBroyles, LLP
D.C. Bar Number 90002670
*Pro Hac Vice* forthcoming
1200 G Street NW.
Suite 800
Washington, D.C. 20005
Direct: 202-258-0741
shawn.sheehy@fisherbroyles.com

He Xian
FisherBroyles, LLP
Michigan Bar Number P81366
*Pro Hac Vice* forthcoming
400 Renaissance Center, Suite 2600
Detroit, MI 48243
Direct: 678-539-9029
he.xian@fisherbroyles.com

*Counsel to Ms. Jing Liu*