Rob L. Phillips
FisherBroyles, LLP
California Bar Number 175354
145 S. Fairfax Ave., 2nd floor
Los Angeles, CA 90036
Direct: (949) 290-9631
rob.phillips@fisherbroyles.com

Shawn T. Sheehy
FisherBroyles, LLP
D.C. Bar Number 90002670
*Admitted Pro Hac Vice*
1200 G Street NW.
Suite 800
Washington, D.C. 20005
Direct: 202-258-0741
shawn.sheehy@fisherbroyles.com

He Xian
FisherBroyles, LLP
Michigan Bar Number P81366
*Pro Hac Vice* forthcoming
400 Renaissance Center, Suite 2600
Detroit, MI 48243
Direct: 678-539-9029
he.xian@fisherbroyles.com
*Counsel to* Ms. Jing Liu

*Attorneys for Plaintiff Jing Liu*

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| JING LIU, an individual,<br><br>    Plaintiff,<br><br>v.<br><br>JIM TURCO, an individual, MARGARET CHENG, an individual, AMERICAN GATEWAY REGIONAL CENTERS, LLC, a California limited liability company, 1875 N. PALM CANYON GATEWAY PARTNERS I, LP, a California limited partnership, 1875 N. | Case No. 2:26-cv-01671-CAS-KSx<br><br>**MEMORANDUM IN SUPPORT OF PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION** |

**FISHERBROYLES, LLP**
145 S. Fairfax, 2nd Floor
Los Angeles, CA 90036
Telephone: (949) 290-9631

PALM CANYON PARTNERS II, LLC, a
California limited liability company, JM
INVESTMENT GROUP, LLC, a California
limited liability company, KRISTI NOEM,
Secretary of the Department of the
Homeland Security, JOSEPH B.
EDLOW, Director of the
United States Citizenship and
Immigration Services,
ALISSA EMMEL, Chief of the
Immigrant Investor Program Office
United States Citizenship and
Immigration Services

                    Defendants.

FISHER BROYLES, LLP
145 S. Fairfax, 2nd Floor
Los Angeles, CA 90036
Telephone: (949) 290-9631

MEMORANDUM IN SUPPORT OF PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**FisherBroyles, LLP**
145 S. Fairfax, 2nd Floor
Los Angeles, CA 90036
Telephone: (949) 290-9631

## <u>TABLE OF CONTENTS</u>

INTRODUCTION ............................................................................................................1

STANDARD OF REVIEW ........................................................................................... 2

STATEMENT OF FACTS ..............................................................................................3

ARGUMENT .................................................................................................................. 6

    I.     MS. LIU IS LIKELY TO SUCCEED ON THE MERITS ...........................................9

           A.     The APA Authorizes This Court to Order Federal
                  Defendants to Recognize Ms. Liu as a Good-Faith
                  Investor and to Terminate AGRC, JMIG, Canyon
                  Partners I, and Canyon Partners II From the
                  EB-5 Visa Program ........................................................................ 7

           B.     The Immigration and Nationality Act Requires
                    the Secretary to Sanction, Debar, and Terminate
                  Regional Centers that Fail to Pay Their Annual
                  Fees, Fail to Submit Annual Reports, and Debar and Terminate
                  Those Individuals and Entities  that a Court Found to Have
                  Committed Fraud ...........................................................................7

           C.     Once an Individual or Entity is Debarred or Terminated
                    From the EB-5 Immigrant Investor Program, the Secretary Must
                  Allow Good-Faith Investors 180 Days to
                  Reinvest Their Funds ....................................................................8

            D.     This Court Should Order Federal Defendants to
                    Terminate and Debar all Non-Federal Defendants
                  From the EB-5 Immigrant Investor Program ..................................9

                  i.     AGRC Failed to Pay Its $20,000 Annual Fee .................9
                  ii.    AGRC Failed to File Its Annual Statements .................12
                    iii.   In the Past Five Years, Courts Have Found that
                          the Non-Federal Defendants Committed Fraud .............13

            E.  Ms. Liu Qualifies as a Good-Faith Investor ..................................14

    II.    ABSENT THE GRANTING OF THE INJUNCTION,
          MS. LIU WILL SUFFER IRREPARABLE HARM ...................................18

    III.   BALANCING THE EQUITIES TIPS IN MS. LIU'S
          FAVOR AND GRANTING THE INJUNCTION IS IN
          THE PUBLIC'S INTEREST ....................................................................21

    IV.   THIS COURT SHOULD WAIVE THE BOND
          REQUIREMENT UNDER FED. R. CIV. P. 65(C) ..................................22

CONCLUSION ..............................................................................................................22

CERTIFICATE OF COMPLIANCE ............................................................................24

CERTIFICATE OF SERVICE ......................................................................................25

1

## <u>TABLE OF AUTHORITIES</u>

2

**Cases**

3

*Ariz. Dream Act Coalition v. Brewer*,

757 F.3d 1053 (9th Cir. 2014) ........................................................18, 19, 20, 21

4

*Barahona-Gomez v. Reno*,

5

167 F.3d 1228 (9th Cir. 1999) .........................................................................22

6

*Califano v. Sanders*,

7

430 U.S. 99 (1977) ........................................................................................ 7

8

*Conn. Gen. Life Ins. Co. v. New Images of Beverly Hills*,

321 F.3d 878 (9th Cir. 2003) ........................................................................ 22

9

*Diamond Sands Apts., LLC v. Clark County*,

10

164 F.4th 759 (9th Cir. 2026) ........................................................................ 3

11

*Drakes Bay Oyster Co. v. Jewell*,

12

747 F.3d 1073 (9th Cir. 2014) ........................................................................ 2

13

*Env't Prot. Info. Ctr. v. Carlson*,

14

968 F.3d 985 (9th Cir. 2020) ........................................................................ 2

15

*Garcia v. Google, Inc.*,

786 F.3d 733 (9th Cir. 2015) ........................................................................ 2

16

*Hui Ran Mu v. Barr*,

17

936 F.3d 929 (9th Cir. 2019) ........................................................................ 9, 14

18

*Inland Empire–Immigrant Youth Collective v. Nielsen*,

19

2018 U.S. Dist. LEXIS 34871 (C.D. Cal. Feb. 26, 2018) ........................................ 20

20

*Nken v. Holder*,

21

556 U.S. 418 (2009) ........................................................................ 2, 21

22

*Nat'l TPS Alliance v. Noem*,

150 F.4th 1000 (9th Cir. 2025) ........................................................................18

23

*Nw. Ass'n of Indep. Sch. v. Labrador*,

24

165 F.4th 1243 (9th Cir. 2026) ........................................................................ 2

25

*Ruiz-Diaz v. United States*,

26

2008 U.S. Dist. LEXIS 79217 (W.D. Wash. Aug. 21, 2008) ........................................ 20

27

28

**FisherBroyles, LLP**
145 S. Fairfax, 2nd Floor
Los Angeles, CA 90036
Telephone: (949) 290-9631

*SEC v. Hui Feng*,

    935 F.3d 721 (9th Cir. 2019) ........................................................................ 15

*Spencer Enters., Inc. v. United States*,

    345 F.3d 683 (9th Cir. 2003) ........................................................................ 15

*Weinberger v. Romero-Barcelo*,

    456 U.S. 305 (1982) ..................................................................................... 21

*Winter v. Natural Resources Defense Council, Inc.*,

    555 U.S. 7 (2008) ............................................................................2, 18, 21

*Youngstown Sheet & Tube Co. v. Sawyer*,

    343 U.S. 579 (1952) .....................................................................................21

**Statutes**

5 U.S.C. § 702 ...............................................................................................7, 18

5 U.S.C. § 706 .........................................................................................7, 9, 12,

8 U.S.C. § 1153(b)(5) ............................................................................ *passim*

8 U.S.C. § 1153(b)(5)(A)(i)–(ii) ..................................................................... 14

8 U.S.C. § 1153(b)(5)(G) ......................................................................8, 12, 13

8 U.S.C. § 1153(b)(5)(H) ...........................................................................8, 13

8 U.S.C. § 1153(b)(5)(J) .......................................................................7, 8, 12

8 U.S.C. § 1153(b)(5)(M) ..........................................................................8, 9

28 U.S.C. § 1331 ..............................................................................................7

**Regulations**

8 C.F.R. § 204.6 ........................................................................................15, 16

**Other Authorities**

82 Fed. Reg. 4738 (Jan. 13, 2017) ................................................................15

88 Fed. Reg. 13141 (Mar. 2, 2023) ............................................................... 10

**FisherBroyles, LLP**
145 S. Fairfax, 2nd Floor
Los Angeles, CA 90036
Telephone: (949) 290-9631

**INTRODUCTION**

Deceit and duplicity pervade the actions inside American Gateway Regional Centers ("AGRC"), JM Investment Group ("JMIG"), 1875 N. Palm Canyon Gateway Partners, LP, ("Canyon Partners I"), and 1875 N. Palm Canyon Partners II, LLC ("Canyon Partners II). Helming these mendacious vessels, sunken by their proven frauds, are James Turco and Margaret Cheng Turco (together "the Turcos") (collectively "Non-Federal Defendants").

Plaintiff, Ms. Jing Liu, is a Chinese national who believes in the American dream. In the hopes of creating American jobs, and charmed by the Turcos's proposals, she invested $550,000 in Canyon Partners I. This was done as part of Ms. Liu's process to obtain an EB-5 visa and eventually permanent residency. Ms. Liu obtained permanent residency in 2024.

As part of her permanent residency renewal, Ms. Liu needed proof that her investment created at least ten jobs. And in August of 2025, Ms. Liu began asking Ms. Cheng Turco for this information. Rather than tell the truth, Ms. Cheng Turco said that the report would take some time and it would cost tens-of-thousands of dollars. Throughout the fall of 2025, Ms. Cheng Turco continued to obfuscate and delay.  Finally, on January 14, 2026, Ms. Liu, through her counsel, demanded the documentation that is owed to Ms. Liu.

The very next day, Ms. Cheng Turco confessed to Ms. Liu via WeChat. On January 15, 2026, Ms. Liu learned for the first time that Canyon Partners I's project, the acquisition and development of the Infusion Beach and Hotel in Palm Springs, California, had failed five years earlier in 2021. Ms. Liu learned, five years after the fact, that her $550,000 investment was gone.

Although the focus of this lawsuit is how the Turcos defrauded Ms. Liu, there is a more immediate problem. Ms. Liu's permanent residency expires on March 23, 2026. Prior to this deadline, Ms. Liu needs Homeland Security and the Citizen and Immigration Services to recognize

FISHER&BROYLES, LLP
145 S. Fairfax, 2ⁿᵈ Floor
Los Angeles, CA 90036
Telephone: (949) 290-9631

her as a good-faith investor so that she can reinvest in another U.S. business and remain in the United States.

Accordingly, Ms. Liu respectfully requests that this Court issue an injunction ordering that Secretary Noem, Director Edlow, and Ms. Emmel (together "Federal Defendants") terminate and debar AGRC, Canyon Partners I, Canyon Partners II, JMIG, and the Turcos from the EB-5 visa immigrant investor program. Ms. Liu also requests that this Court order the Federal Defendants to recognize Ms. Liu as a good-faith investor and permit Ms. Liu 180 days to reinvest in another program so that she can remain an investor in the United States.

## STANDARD OF REVIEW

To obtain a preliminary injunction, Ms. Liu must show: (1) that she is likely to succeed on the merits; (2) that she will suffer irreparable harm absent the granting of an injunction; (3) that the balance of the equities favors granting her requested injunction; and (4) that granting Ms. Liu's requested injunction is in the public interest. *See Nw. Ass'n of Indep. Sch. v. Labrador,* 165 F4th 1243, 2026 U.S. App. LEXIS 2332, *8 (9th Cir. Jan. 29, 2026) (citing *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008)). The first factor, likelihood of success, is the most important factor and is considered the threshold factor. *See Env't Prot. Info. Ctr. v. Carlson,* 968 F.3d 985, 989 (9th Cir. 2020). Because Ms. Liu seeks a mandatory injunction, she must show that both the facts and the law clearly support her position. *See Garcia v. Google, Inc.*, 786 F.3d 733, 740 (9th Cir. 2015). Additionally, when the government is the defendant, the third and fourth factors—the balancing of the harms and weighing the public interest—merge into one factor. *See Nken v. Holder*, 556 U.S. 418, 435 (2009); *Drakes Bay Oyster Co. v. Jewell*, 747 F.3d 1073, 1092 (9th Cir. 2014). Lastly, the Ninth Circuit applies a sliding-scale approach to requests for preliminary injunctions. This means that where a movant fails to satisfy the threshold factor, likelihood of success, a court may deny the request for an injunction without analyzing the other factors.

FisherBroyles, LLP
145 S. Fairfax, 2ⁿᵈ Floor
Los Angeles, CA 90036
Telephone: (949) 290-9631

*Diamond Sands Apts., LLC v. Clark Cnty.*, 164 F.4th 759, 2026 U.S. App. LEXIS 1197, *5-6 (9th Cir. Jan. 16, 2026). Similarly, a movant may receive an injunction by providing a stronger showing on the merits while providing a lesser showing on the remaining factors. *See id*.

### STATEMENT OF FACTS

Ms. Liu was born in Beijing, China on April 24, 1971. Liu Decl. ¶ 3. In China, Ms. Liu excelled as a real estate consultant. Liu Decl. ¶ 4. Then, in 2014, Ms. Liu decided that she wanted to unleash her entrepreneurial spirit in the United States. Liu Decl. ¶ 5. She explored her immigration options and decided that the EB-5 immigrant investor visa provided her with the best opportunity to immigrate to the United States and eventually become a permanent resident. Liu Decl. ¶ 6. Her immigration attorney recommended AGRC's Infusion Beach and Hotel project as good project for investment.

In the spring of 2014, Ms. Liu's attorney gave her the Confidential Private Placement Memorandum ("the Memorandum") Ex. C; Liu Decl. ¶ 7. The Memorandum explained that the investment involved risk, particularly in construction, real estate, and reliance on management. Ex. C at 16-20. Furthermore, because the project was located in a Targeted Economic Area, the minimum investment required was lower, $500,000. Liu Decl. ¶¶ 9, 35; Ex. Z. The Memorandum made clear that investments were at risk. Ex. C at 16-20. In exchange for the $550,000 investment, Ms. Liu would receive a 2.94% interest in the partnership, making her a limited partner. Liu Decl. ¶ 34. There was an opportunity for limited partners to receive profits and losses. Ex. C at 5-6; 11-12. Importantly, the partnership agreement stated that limited partners had access to financial documents and that the limited partners would receive annual K-1 statements. Ex. C at 6; Ex. P 000006.

Additionally, the Memorandum stated that James Turco would serve as the General Partner of Canyon Partners I and serve as a managing member of Canyon Partners II. Ex. C at 21.

**FISHERBROYLES, LLP**
145 S. Fairfax, 2ⁿᵈ Floor
Los Angeles, CA 90036
Telephone: (949) 290-9631

Ultimately, however, Ms. Liu decided the Infusion Beach and Hotel project was the right investment for her. Liu Decl. ¶¶ 8-9.

On May 19, 2015 she invested $550,000 in Canyon Partners I which included the $50,000 administrative fee. Liu Decl. ¶ 9. Ms. Liu obtained her EB-5 visa on April 26, 2017. Liu Decl. ¶ 9, 40; Ex. T. By 2024, she obtained her permanent residency. Liu Decl. ¶ 11.

For the next five years, from 2015-2020, Ms. Liu did not receive any updates concerning the Infusion Beach and Hotel project. Liu Decl. ¶ 10. Though much did occur, including allegations that Canyon Partners II was defrauded by one of its business partners; the partner who was responsible for securing the "Infusion" brand, the highlight of the hotel, left; and somehow the Turcos, through AGRC, purchased a personal residential home worth more than $2.3 million. Ex. AA 000165; Ex. J ¶¶ 31-41; Ex. N; and Ex. O ¶¶ 23-27, 31, 36-37. Then, on April 17, 2020, Ms. Cheng Turco sent Ms. Liu an invitation for an investor meeting. The project was no longer the Infusion Beach and Hotel Project but the Palm Springs Marriott hotel project Ex. Y 0000016. Later, in a WeChat message to Ms. Liu, Ms. Cheng Turco explained that additional investments were needed by May 10, 2020. *Id*. She further told Ms. Liu that the "project is complete…" but "Because of pandemic delays, the project is now in trouble…" and the "bank is delaying disbursement." *Id*. Ms. Cheng Turco ended the message with: "If the project fails due to this, its everyone's loss—very regrettable." *Id*. Ms. Liu chose not to invest additional funds. Liu Decl. ¶ 10.

Still, she heard nothing about the project. In fact, she was led to believe that her investment was safe. In 2024, Ms. Cheng Turco sent Ms. Liu a K-1 partnership tax statement. The statement said that by the end of 2023, Ms. Liu had $449,449 in her partnership operating account. Ex. R.

In August 2025, Ms. Liu began texting Ms. Cheng Turco concerning the documents she

FISHER&BROYLES, LLP
145 S. Fairfax, 2nd Floor
Los Angeles, CA 90036
Telephone: (949) 290-9631

needed for her visa renewal. Specifically, Ms. Liu needed documentation proving that her $550,000 investment created at least ten jobs. Ex. Y 000008-11. It is here that Ms. Cheng Turco begins to obfuscate. She first stated that it would take months to complete and later she stated that it would cost tens of thousands-of-dollars. *Id*. Undeterred, Ms. Liu persisted, asking again in September and November for the jobs report, but to no avail. *Id*. at 000010-11. Ms. Liu then engaged counsel.

On January 14, 2026, counsel for Ms. Liu sent the Turcos a letter demanding financial documents and documents demonstrating how many jobs the project had created. Ex. X. The very next day, January 15, 2026, Ms. Cheng Turco finally confessed to Ms. Liu.

Ms. Cheng Turco stated: "Let me be honest with you. The project did exist." Later, she insisted "We did not intentionally allow the project to collapse." Ex. Y 000012. She continued stating that in February 2020, the Turcos received notice that the bank was delaying disbursement of the construction loan. *Id*. Importantly, Ms. Cheng Turco confessed that the purpose of the construction loan was not for construction but to pay off the commercial loan. *Id*. Without the construction loan, the Turcos could not repay the commercial loan. Without repaying the commercial loan, the commercial lender "moved to take the land." *Id*. Ms. Cheng Turco then disclosed, for the first time, that Canyon Partners II filed for bankruptcy. *Id*.

Then she dropped the bombshell: "So in 2021, the land was taken[]" meaning that the commercial lender foreclosed on the property. *Id*. Later, Ms. Cheng Turco said "The project was already taken in 2021. That effectively meant the project no longer existed." Ex. Y 000013.

Ms. Cheng Turco continued confessing. As for the job creation report that Ms. Liu asked for in August, Ms. Cheng Turco said "But even if another report were issued, it would not help—the number of employees was insufficient." *Id*.

FISHERBROYLES, LLP
145 S. Fairfax, 2nd Floor
Los Angeles, CA 90036
Telephone: (949) 290-9631

FisherBroyles, LLP
445 S. Fairfax, 2nd Floor
Los Angeles, CA 90036
Telephone: (949) 290-9631

**ARGUMENT**

Initially, this Court should order Federal Defendants to debar and terminate AGRC, JMIG, Canyon Partners I, Canyon Partners II, and the Turcos for three reasons.

*First*, AGRC failed to pay its annual fees beginning in October of 2023. Federal statutes require Federal Defendants to debar and terminate those regional centers, like AGRC, that fail to pay the $20,000 annual fee.

*Second*, AGRC failed to file annual reports. Even if AGRC did file annual reports, those reports were materially false. AGRC failed to disclose lawsuits involving allegations of fraud and later, court determinations that investors were defrauded. AGRC also failed to mention that Canyon Partners II filed for bankruptcy in 2020. *See infra* at 13. Federal Defendants, by statute, must impose sanctions for failure to file reports and for filing reports that are materially false. These sanctions include both termination and debarment.

*Third*, for those persons who a court of law has determined to have committed fraud, Federal law prohibits Secretary Noem from allowing those persons to work with entities like AGRC, JMIG, Canyon Partners I and Canyon Partners II. Multiple courts of law have found that the Turcos have committed fraud. *See infra* at 13-14. One court found that the Turcos defrauded two investors who, like Ms. Liu, invested in Canyon Partners I. The Secretary should debar the Turcos and prevent them from ever again participating in the EB-5 investor program. Since the Turcos are the managing officers of AGRC and Canyon Partners I's general partner is Mr. Turco, this Court should also order Secretary Noem to terminate and debar AGRC, JMIG, Canyon Partners I and Canyon Partners II.

Next, this Court should order Federal Defendants to recognize Ms. Liu as a good-faith investor. Ms. Liu was awarded her EB-5 visa in 2015 demonstrating that she satisfied the

requirements of putting her capital at risk. As demonstrated by the text messages with Ms. Cheng Turco from January 2026, Ms. Liu was ignorant of the Turcos' fraudulent activities. This Court should order Federal Defendants to recognize Ms. Liu as a good-faith investor and then give Ms. Liu 180 days to redirect her investment so that she can maintain her legal status in the United States.

**I.    MS. LIU IS LIKELY TO SUCCEED ON THE MERITS.**

    **A.    The APA Authorizes This Court to Order Federal Defendants to Recognize Ms. Liu as a Good-Faith Investor and to Terminate AGRC, JMIG, Canyon Partners I, and Canyon Partners II From the EB-5 Visa Program.**

The U.S. Supreme Court ruled that the federal question statute, 28 U.S.C. § 1331, grants courts jurisdiction to hear Administrative Procedure Act ("APA") claims. *Califano v. Sanders*, 430 U.S. 99, 105-07 (1977). The APA vests in persons a right to judicial review where a person suffers a legal wrong due to agency action or inaction. 5 U.S.C. § 702. Courts are then empowered to decide all relevant questions of law and to "compel agency action unlawfully withheld or unreasonably delayed; hold unlawful agency action that is not in accordance with law, contrary to constitutional right, power, privilege, or immunity, or short of statutory right. *Id*. §§ 706(1) and (2)(A-C).

    **B.    The Immigration and Nationality Act Requires the Secretary to Sanction, Debar, and Terminate Regional Centers that fail to pay Their Annual Fees, fail to Submit Annual Reports, and Debar and Terminate Those Individuals and Entities that a Court found to have Committed Fraud.**

*First*, federal law commands both the Secretary of Homeland Security and Director of USCIS to terminate the designation of any regional center that does not pay the annual fee within 90 days of the fee's due date. 8 U.S.C. § 1153(b)(5)(J)(iv)(II). In 2022, Congress established the EB-5 Integrity Fund which requires regional centers to pay $20,000 annually on October 1 beginning on October 1, 2022. *Id*. § 1153(b)(5)(J)(ii)(I)(aa)-(II). Federal law imposes on the

Secretary the obligation of collecting these fees. *Id*. § 1153(b)(5)(J)(ii)(I). A regional center's failure to pay the annual fee by December 30 incurred automatic termination. *Id*. § 1153(b)(5)(J)(iv)(II).

*Second*, federal law commands the Director of USCIS to sanction any regional center that fails to submit an annual report or if the Director determines that the regional center submitted an annual report containing a materially false statement of fact. 8 U.S.C. § 1153(b)(5)(G)(iii)(I)(aa). Federal law requires that on these annual reports, regional centers provide a description of "any pending material litigation or bankruptcy proceedings, or material litigation or bankruptcy proceedings resolved during the preceding fiscal year…". *Id*. § 1153(b)(5)(G)(i)(IV). These reports are also required to contain evidence that "100 percent of the capital…has been committed to each capital investment project." *Id*. § 1153(b)(2)(G)(vi)(bb-cc). Failure to file an annual statement or filing statements that contain materially false statements can incur the sanction of debarment and termination. *See id*. § 1153(b)(5)(G)(iii)(I)(cc)-(dd).

*Third*, federal law also requires the Secretary to prohibit all persons from having any involvement in regional centers, New Commercial Enterprise ("NCE") and Job Creating Entities ("JCE") where those persons were found to have committed fraud in the previous 10 years. *See* 8 U.S.C. § 1153(b)(5)(H)(i)(I)(aa)-(bb).

C. **Once an Individual or Entity is Debarred or Terminated from the EB-5 Immigrant Investor Program, the Secretary must Allow Good-Faith Investors 180 days to Reinvest Their Funds.**

Once the Secretary and Director terminates and debars individuals or entities from the EB-5 immigrant investor program, the Secretary must allow the impacted investor's legal status to remain valid and the investor's presence in the United States to remain authorized. 8 U.S.C. § 1153(b)(5)(M)(i)(I). The Secretary is required to notify the "alien beneficiaries" of the termination

MEMORANDUM IN SUPPORT OF PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION

8

or debarment. *Id*. § 1153(b)(5)(M)(i)(II).

The notice triggers a 180-day extension of authorization on the investor's legal status. *Id*. § 1153(b)(5)(M)(ii). Immigrant investors have 180 days from this notice to invest with a NCE in good standing. *See id*. § 1153(b)(5)(M)(ii)(I)-(II). Furthermore, the Secretary *shall* permit an investor to amend their petition within 180 days of the notice to satisfy the applicable requirements under the immigrant investor program. *Id*. § 1153(b)(5)(M)(iii)(I). In doing so, the Secretary must retain the immigrant visa priority date "related to the original petition and prevent age-out of derivative beneficiaries." *Id*. § 1153(b)(5)(M)(v)(I). The Secretary is also empowered to hold the petition in abeyance and "extend any applicable deadlines under this paragraph." *Id*. § 1153(b)(5)(M)(v)(II).

Far from imbuing the Secretary with discretion, Congress issued a series of specific mandates on how the Secretary and Director are to treat good-faith investors after terminating a regional center or debarring a new commercial enterprise and job creating entity. These series of mandates reflect Congress's purpose in enacting the EB-5 program, namely, that it wanted to attract immigrants who could invest in the United States to help create jobs. *See Hui Ran Mu v. Barr*, 936 F.3d 929, 931 (9th Cir. 2019). Rather than lose these immigrant investors due to the fraudulent acts of some, Congress sought to provide an avenue for these investors to redirect their capital into another job creating program to help the many.

## D. __This Court Should Order Federal Defendants to Terminate and Debar AGRC, JMIG, Canyon Partners I, and Canyon Partners II.__

### i. __AGRC Failed to pay its $20,000 Annual Fee.__

This Court should order Secretary Noem to terminate American Gateway Regional Centers for failure to pay the $20,000 annual fee. 5 U.S.C. § 706(1)-(2).[1]

---

[1] Or order them to provide documents of such payments. This information is not public and is

FISHERBROYLES, LLP
145 S. Fairfax, 2nd Floor
Los Angeles, CA 90036
Telephone: (949) 290-9631

The financial problems for Mr. Turco and Ms. Cheng Turco began in 2014. Compl. ¶¶ 43-60; Ex. J. ¶¶ 40,42-43; Ex. N. ¶ 6.  The Infusion Beach and Hotel closed in 2015. Compl. ¶ 61; Ex. J ¶ 41. By 2020, the Turcos needed a construction loan to repay a commercial loan. Ex. Y 000012. When the bank decided to withdraw the construction loan in 2020, the Turcos, as managing members of Canyon Partners II, were forced to file for bankruptcy. *Id*. Compl. ¶¶ 193. By 2021, the Turcos lost the beach and hotel property. Ex. Y 000012-13. AGRC served as the general partner of Canyon Partners I, the entity that provided the investor finance to Canyon Partners II, the entity that acquired and was supposed to develop the hotel and beach club. Ex. C at 4. By 2021, that project had failed.

It is difficult to imagine that one year after Canyon Partners II's bankruptcy, AGRC timely made its $20,000 payment to the EB-5 Integrity Fund on or within 90 days of April 1, 2023. *See* 88 Fed. Reg. 13141, 13141 (Mar. 2, 2023) (establishing April 1, 2023 as the deadline for the first $20,000 integrity fund payment). More dubious still is the notion that AGRC timely made its $20,000 payment on or within 90 days of the following dates:

- October 1, 2024; and
- October 1, 2025.

This is especially true since Ms. Cheng Turco, in 2024, told Ms. Liu that she did not have money to repay Ms. Liu's additional $100,000 investment from 2018. Liu Decl. ¶ 42; Ex. Y 000005-6; Ex. U. On September 13, 2024, Ms. Liu inquired about Ms. Cheng Turco's ability to repay Ms. Liu's 2018 investment of $100,000, in installments. Ex. Y 000005. Ms. Cheng Turco responded that she cannot repay Ms. Liu even in installments. *Id*. She does say that she is expecting "deposits from a few applicants" and once she receives those, she will pay Ms. Liu part of the

---

solely within the possession of the Defendants. Given the facts, it seems unlikely that the fee was paid and the reports were filed. Ms. Liu is entitled to proof either way.

FisherBroyles, LLP
445 S. Fairfax, 2nd Floor
Los Angeles, CA 90036
Telephone: (949) 290-9631

$100,000. Two months later, Ms. Cheng Turco still had not paid Ms. Liu. Ex. Y 000005-6.

Additionally, an investor in 2020 filed a lawsuit against AGRC and Canyon Partners I and II. This Complaint contained several allegations of fraud. *Ung Ti Lam and Phung Nguyen v. Jim Turco, Margaret Turco, and American Gateway Regional Centers, et al.*, No. 20ST-cv-19369 (Cal. Sup. Ct. May 21, 2020) (Los Angeles County) Ex. BB 000009-16. Approximately two years later, a default judgment was entered against AGRC. *See* Ex. BB at 000031-33. The default judgment against AGRC, Canyon Partners I, Canyon Partners II, JMIG, and the Turcos amounted to more than $1 million. *Id*. at 000032-33.

Then, the very next month, on October 31, 2022, a separate judgment lien was issued against the Turcos in an amount exceeding $2.3 million. *See Xueling Zhang v. James Turco et al*, No. 30-2021-01206119-CU-BC-CJC.  (Cal. Sup. Ct.) (Orange County). Ex. AA 000214.   Within approximately 30 days, and occurring around October 1, 2022, the Turcos were faced with over $3 million in judgments. And this was not the final judgment against the Turcos. On May 23, 2024, the same court entered a judgment against the very same Defendants here, on claims that included allegations of fraud. This judgment was in favor of Global Student Housing. The amount of the judgment: $5,959,390.89. Ex. AA 000017, 000207.

The Turcos then obstructed the plaintiffs' efforts at collecting the judgment in the *Ung Ti Lam and Phung Nguyen* litigation. Ex. BB 000020. During debtor's depositions, more information came to light concerning the Turcos's financial distress.  In September of 2023, the Turcos, under oath, confirmed that Ms. Cheng Turco's mother lives with them and it is Ms. Cheng Turco's mother who pays their rent. *Id*. 000021. In the following three years, the Turcos's financial distress seems to have further deteriorated. In January of 2026, Ms. Cheng Turco told Ms. Liu that she lives in someone else's home and has less than $350 in her bank account. Ex. Y 000013.

FisherBroyles, LLP
145 S. Fairfax, 2nd Floor
Los Angeles, CA 90036
Telephone: (949) 290-9631

Despite Ms. Cheng Turco blithely stating to Ms. Liu in September of 2024 that AGRC paid the $20,000 fee, Ex. Y 000004, it strains credulity to believe that if the officers of AGRC lacked sufficient funds to pay their rent, to pay a $1.2 million judgment, to pay a $2.3 million judgment, to pay a $5.95 million judgment, and to repay any part of the $100,000 loan from Ms. Liu, that they had enough money to pay Homeland Security's $20,000 annual fee by December 30 in 2023, 2024, and 2025.

Accordingly, this Court should order Secretary Noem to terminate AGRC for failure to pay the annual fee. 8 U.S.C. § 1153(b)(5)(J)(iv)(II); 5 U.S.C. § 706(1) (authorizing this Court to compel agency action that was unlawfully withheld).

### ii.    AGRC Failed to File its Annual Statements.

Since Ms. Liu invested $550,000 in 2015, the Turcos never showed any financial document to Ms. Liu. This occurred despite her repeated requests to see financial statements and proof that Infusion Beach and Hotel project created jobs. Liu Decl. ¶¶ 10, 46, 49, 57.

Unfortunately, the Turcos refusal to provide financial documents to their limited partners is nothing new but instead reflects a long consistent pattern of behavior. The Turcos refused to provide full and complete financial documents their partners at Baby Rhino I, LLC. Compl. ¶¶ 108; Ex. N. ¶¶ 11, 14-21. The Turcos refused to provide financial documents to other Canyon Partners I, investors. *See* Ex. BB 000066-67. Furthermore, Ms. Liu repeatedly requested AGRC's annual statements filed with USCIS. Liu Decl. ¶¶ 10, 46, 49. Ms. Liu is entitled by law to these documents. 8 U.S.C. § 1153(b)(5)(G)(iv). When Ms. Liu's counsel asked for financial statements, the Turcos refused to provide this information. Ms. Cheng Turco told Ms. Liu that she does not have tax returns for the past six years. Ex. Y 000013. If the Turcos refused to share financial documents with their partners, even when required by law to do so, it seems unlikely that the

FisherBroyles, LLP
445 S. Fairfax, 2nd Floor
Los Angeles, CA 90036
Telephone: (949) 290-9631

FisherBroyles, LLP
145 S. Fairfax, 2ⁿᵈ Floor
Los Angeles, CA 90036
Telephone: (949) 290-9631

Turcos through AGRC shared financial documents with USCIS.  When Ms. Liu's counsel asked for financial statements, including documents that would show Ms. Liu's investment was used consistent with the business plan, a document that would have satisfied this request would have been the annual statement AGRC submitted to Homeland Security. *Id*. § 1153(b)(2)(G)(vi)(bb-cc). But the Turcos refused to disclose any documents.

Even if the Turcos, through AGRC, filed these annual statements with USCIS, it is likely that these annual statements contained materially false statements. For example, it is unlikely that the reports disclosed Canyon Partners II bankruptcy in 2020. *See 1875 N. Palm Canyon Partners II*, LLC 20-bk-12856 (C.D. Cal. Oct. 11, 2020). It is also unlikely that the reports disclosed the default judgment entered against the Turcos and AGRC on September 29, 2022, finding that the Turcos had committed fraud. *Ung Ti Lam*, Ex. BB 000067-73; 76-78. It is likely that the Turcos did not disclose that a $5.95 million judgment was entered against them for fraud in the *Global Student Housing, LLC* litigation.  Ex. AA 000013, 000017, 000024-26; 000207.

Federal law compels the Secretary and the Director of USCIS to impose sanctions for failure to file reports and for filing reports that contain materially false statements. *See* 8 U.S.C. § 1153(b)(5)(G)(iii)(I)(aa). This includes the ultimate sanction of termination and debarment. *Id*. § 1153(b)(5)(G)(iii)(I)(cc)-(dd). Because the actions of the Turcos are so egregious, this Court should order Secretary Noem, Director Edlow, and Ms. Emmel to terminate AGRC and debar JMIG, Canyon Partners I and Canyon Partners II.

### iii.    In the Past Five Years, Courts Have Found That the Non-Federal Defendants Committed Fraud.

Importantly, because there was a court judgment as to fraud, federal law requires Secretary Noem to prohibit the Non-Federal Defendants from participating in the EB-5 investor program. 8 U.S.C. § 1153(b)(5)(H)(i)(I)(aa)-(bb). The Non-Federal Defendants were found to have committed

fraud in at least two cases. *First*, on September 29, 2022, and in the very same Canyon Partners I project within which Ms. Liu invested, the Los Angeles County Superior Court found that the Non-Federal Defendants had jointly and severally defrauded investors and found that the investors' damages exceeded $1,000,000. *See Ung Ti Lam*, No. 20ST-cv-19369 (Cal. Sup. Ct. March 25, 2022) (default judgment package adducing evidence that the Turcos committed fraud, fraudulent inducement, and fraudulent concealment on two Canyon Partners I investors) (attached as Ex. BB 000067-73); *see id*. (entry of judgment) (attached as Ex. BB 000077-78).

Next, on May 23, 2024, the California Superior Court in Orange County entered a judgment that the Non-Federal Defendants committed fraud on a partner in another AGRC project. Ex. AA 000013-17; 000207 (entering judgement against that the Non-Federal Defendants for conversion, breach of fiduciary duty, and breach of contract where all claims involved allegations of fraud).

This Court should issue an order prohibiting the Non-Federal Defendants from any involvement in the EB-5 investor program. This is because courts of law in 2022 and 2024 ruled that these individuals and entities defrauded investors. Ex. AA 000206-07; Ex. BB 000077-78. The court held Non-Federal Defendants to be jointly and severally liable, finding that they owed the plaintiff $5,959,390.89 and $1,100,000 respectively. Ex. AA 000207; Ex. BB 000077-79. Accordingly, the Federal Defendants should terminate and debar Non-Federal Defendants from the EB-5 investor program.

### E.  Ms. Liu Qualifies as a Good-Faith Investor.

The EB-5 visa program bestows visas on foreign nationals who invest their capital in a new commercial enterprise that both benefits the economy of the United States and creates at least ten jobs in the United States. *See* 8 U.S.C. § 1153(b)(5)(A)(i)-(ii). "The purpose of the EB-5 Program is to promote the immigration of people who can help create jobs for U.S. workers through their investment of capital into the U.S. economy." *Hui Ran Mu*, 936 F.3d at 931. In 2015, when Ms.

Liu made her $550,000 investment in a Targeted Employment Area, this satisfied the investment requirement. Ex. Z; *United States SEC v. Hui Feng*, 935 F.3d 721, 725 (9th Cir. 2019); 82 Fed. Reg. 4738, 4741-42 (Jan. 13, 2017).

To successfully obtain an EB-5 visa, the foreign national must submit evidence demonstrating that:

1. The required capital has been invested in a new for-profit commercial enterprise, and is at risk;

2. The investment is made with the foreign national's own legally acquired funds;

3. The investment is in a targeted employment area meaning an area with a high unemployment rate; and

4. A business plan demonstrating the need for at least ten full-time jobs in the next two years.

*See Spencer Enters. v. United States,* 345 F.3d 683, 686 (9th Cir. 2003).

*First*, Ms. Liu's $550,000 investment in May of 2015 was at risk. According to the Memorandum, in exchange for the $550,000 investment, she received a 2.94% interest in the limited partnership. Liu Decl. ¶ 32-34. Additionally, the Memorandum stated that investing in the partnership contained elements of risk and that investing in the hotel project risked losing the $550,000 investment. Ex. C at 3, 6, 16-20.  This is sufficient evidence of investing capital that is at risk. 8 C.F.R. § 204.6(j)(2). Similarly, there is a chance for profit. The Memorandum states that Ms. Liu is supposed to receive annual financial statements that include K-1 statements. Ex. C at 5-6. These K-1 statements inform a partner about their annual losses as well as their annual profits. Ex. C at 6. The Memorandum also discusses how profits will be allocated among the partners. Ex. C at 11-12.

**FISHERBROYLES, LLP**
145 S. Fairfax, 2nd Floor
Los Angeles, CA 90036
Telephone: (949) 290-9631

*Second*, Ms. Liu's funds were obtained legally. The source of her funds were the after-tax income of her husband, Shufeng Zhang. Ex. V at 4. Between January 2012 and March of 2015, Mr. Zhang earned approximately $1,158,556 for his work at the China Fortune Land Development Co., Ltd. Ex. V at 4-5. This is evidenced by, among other documents, Mr. Zhang's Employment and Income Certificate and his Tax Payment Certificate. Ex. V at 10-15. Then, in April of 2013 and again in March of 2015, Mr. Zhang transferred to Ms. Liu's Chinese bank account, approximately $551,900. Ex. V at 5-7. Ms. Liu then worked to transfer this money from her Chinese bank account to an account in the United States. Ex. V at 6-7. By May 18, 2015, Ms. Liu had $551,726 in her U.S. bank account. Ex. V at 7. This proves that Ms. Liu lawfully obtained the funds.

*Third*, Ms. Liu's investment was in a Targeted Employment Area. On March 10, 2014, Mr. Brian Peck, the Deputy Director of California Governor's Office of Business and Economic Development, stated that the Infusion Beach and Hotel project, located in Riverside County, qualified as a Targeted Employment Area. Ex. Z. Ms. Liu therefore satisfies this requirement. 8 C.F.R. § 204.6(h)(i); *id*. § 204.6(j)(6)(ii).

*Fourth*, Ms. Liu submitted with her application a report by the economist Dr. Paul Sommers. He used a statistical modeling method known as RIMS II, a method that USCIS has accepted as reasonable in projecting job creation. Dr. Sommers's report determined that the Infusion Beach and Hotel project would generate 443.3 jobs. Ex. W at 2-3, 5-6.

Finally, Ms. Liu is a good-faith investor in that she was completely unaware of the fraud occurring with AGRC and Canyon Partners I and Canyon Partners II. Ms. Liu did not even know that the Infusion Beach and Hotel project had failed until Ms. Cheng Turco texted her in January of 2026.

On January 14, 2026, counsel to Ms. Liu emailed a letter to Mr. Turco and Ms. Cheng Turco requesting tax returns and financial statements, including ledgers, payroll records, and updates concerning the status of the Infusion Beach and Hotel project. Ex. X at 2. The very next day, January 15, 2026, Ms. Cheng Turco sent voice messages via WeChat to Ms. Liu. Ex. Y 000012-14.

During these voice messages, Ms. Cheng Turco confessed that although the project "did exist" the 1875 N. Palm Canyon Drive property was taken by the commercial lender in 2021, five years ago. Ex. Y 000012. Understandably, Ms. Liu's heart sank.

Ms. Cheng Turco, for the first time, informs Ms. Liu that in 2020, the company Canyon Partners II filed for bankruptcy. *Id*. Ms. Cheng Turco, for the first time, states that in February of 2020, the bank informed Canyon Partners II that the bank would withhold Canyon Partners II's construction loan. *Id*. Then, perhaps unwittingly describing the Turco's financial practices of robbing Peter to pay Paul, Ms. Cheng Turco states that the construction loan was not for construction but to repay the commercial loan. *Id*. Because the construction loan collapsed, the commercial lender moved to take the property in 2021. *Id*. To emphasize the point, Ms. Cheng Turco says: "The project was already taken in 2021. That effectively meant the project no longer existed." *Id*. 000013. Five years after the project's collapse, Ms. Cheng Turco finally told Ms. Liu that the project she invested in has failed.

Ms. Cheng Turco then protests her innocence stating that the project was a risky investment. *Id*. She tells Ms. Liu that a lawsuit would be like obtaining blood from a stone as she and Mr. Turco "do not have money" and that she is "living in someone else's home." *Id*. She states that if Ms. Liu wants all the money in her bank account, that would amount to $327. *Id*. Later Ms. Cheng Turco says that if someone were to sue "where would the money come from? It cannot be

FISHERBROYLES, LLP
145 S. Fairfax, 2nd Floor
Los Angeles, CA 90036
Telephone: (949) 290-9631

recovered." *Id*. 000014. Later she says: I do not have money to repay you." *Id*. In the span of 3 minutes and 56 seconds, Ms. Cheng Turco expressly states not to sue her at least four times. During that same span she states at least three times that she does not have any money to pay a judgment. *Id*. at 000012-14.

As can be seen from these text messages, Ms. Liu found out, for the first time, that the project collapsed five years after it happened. Ms. Liu did not have any knowledge of fraudulent activity in AGRC, JMIG, Canyon Partners I and Canyon Partners II. Ms. Liu is therefore a good-faith investor.

## II.    ABSENT THE GRANTING OF THE INJUNCTION, MS. LIU WILL SUFFER IRREPARABLE HARM.

This prong requires Ms. Liu to demonstrate that irreparable harm is likely to occur absent this Court granting the requested injunction. *See Winter*, 555 U.S. at 22. Here, the analysis is not concerned with the "magnitude of the injury" rather, the analysis focuses on the injury's irreparability. *Azar*, 911 F.3d at 581. "Irreparable harm is harm for which there is no adequate legal remedy, such as an award for damages." *Nat'l TPS All. v. Noem*, 150 F.4th 1000, 1025 (9th Cir. 2025). Importantly therefore, because Ms. Liu brings her claims against Federal Defendants under the APA for failure to sanction AGRC, she is unable to recover monetary damages from the Federal Defendants. *See* 5 U.S.C. § 702 (permitting persons who are aggrieved by agency action or inaction to bring claims in federal court to seek relief "other than money damages….".); *see also Azar*, 911 F.3d at 581. Additionally, intangible injuries too may constitute irreparable harm. *Ariz. Dream Act Coalition v. Brewer*, 757 F.3d 1053, 1068 (9th Cir. 2014).

The U.S. Court of Appeals for the Ninth Circuit has held that wrongful removal and job loss all constitute irreparable harm. *See Nat'l TPS All.*, 150 F.4th at 1025-26. Furthermore, the Ninth Circuit has held that irreparable harm occurs where the deprivation of driver's licenses limits

FisherBroyles, LLP
145 S. Fairfax, 2nd Floor
Los Angeles, CA 90036
Telephone: (949) 290-9631

a person's professional opportunities and thus diminishes a person's opportunity to pursue their chosen profession. *Ariz. Dream Act Coal.*, 757 F.3d at 1068 (stating that he "loss of opportunity to pursue [one's] chosen profession constitutes irreparable harm."). (internal quotation marks omitted).

Ms. Liu is an entrepreneur who believes in American ingenuity. She therefore wants to invest in America and help grow the American economy. Liu Decl. ¶¶ 5, 65. Absent the granting of this injunction, Ms. Liu will be required to return to China. Returning to China substantially burdens, if not completely eviscerates, her ability to invest in the people and the economy of the United States. This is because China employs draconian controls over currency conversion from Renminbi—China's currency—to U.S. dollars. China also controls the amount of dollars that are permitted to leave China. Thus, Chinese law limits individuals to exchange Renminbi for dollars up to $50,000 annually.[2] Liu Decl. ¶¶ 66-67.

This is not a hypothetical concern. China's currency control laws have already impacted Ms. Liu's investments in the United States when she was living in China. *See* Ex. V at 6-7.; Liu Decl. ¶ 66. For Ms. Liu to make her $550,000 investment in Canyon Partners I, she was required to enlist the help of 12 people. Ms. Liu wired 3,500,000 Renminbi to each of the 12 accounts for these individuals. Then, the individuals exchanged that amount for $50,000. Those 12 individuals then wired $50,000 each to Ms. Liu's bank account in the United States. Ex. V at 6-7. Ten days after enlisting 12 people for help, Ms. Liu had received the funds in her U.S. bank account. Ex. V

---

[2] *See FinCEN Advisory on the Use of Chinese Money Laundering Networks by Mexico-Based Transnational Criminal Organizations to Launder Illicit Proceeds*, U.S. Department of the Treasury at 3 n.15 (Aug. 28, 2025) *available at www.fincen.gov/system/files/2025-08/FinCEN-Advisory-CMLN-508.pdf* (last visited Feb. 26, 2026) ("China's foreign exchange rules cap the maximum amount of renminbi (RMB) that Chinese citizens are allowed to convert into other currencies at approximately $50,000 each year and restricts Chinese citizens from directly transferring RMB abroad without prior approval from the Chinese State Administration of Foreign Exchange.").

FisherBroyles, LLP
145 S. Fairfax, 2nd Floor
Los Angeles, CA 90036
Telephone: (949) 290-9631

at 7; Liu Decl. ¶ 66

This was the painstaking process that Ms. Liu was required to endure to make a $550,000 investment. Accordingly, China's draconian currency controls severely limit and diminish Ms. Liu's ability to be an entrepreneur in U.S. companies. Liu Decl. ¶¶ 66-67

Absent granting the requested injunction, therefore, allowing Ms. Liu to remain in the United States as a good-faith investor, Ms. Liu will suffer irreparable harm because China's currency controls would effectively prohibit Ms. Liu from investing in U.S. companies and U.S. projects. This diminishes her ability to pursue her desired career as a U.S. entrepreneur investing in U.S. companies. This constitutes irreparable harm. *See Ariz. Dream Act Coal.*, 757 F.3d at 1068 (finding irreparable harm where Arizona enacted a policy denying driver's licenses to DACA recipients because plaintiffs' inability to obtain driver's licenses  limits their professional opportunities and ability to advance their careers such as the inability of one individual to expand his business to include customers who do not live near his home); *Inland Empire - Immigrant Youth Collective v. Nielsen*, No. 17-2048, 2018 U.S. Dist. LEXIS 34871, *61-65 (C.D. Cal. Feb. 26, 2018) (holding that the deprivation of earnings and job opportunities constitutes irreparable harm).

Furthermore, because Ms. Liu has lived in the United States for more than ten years, she has established roots in the community and has established a network of businesses with whom she would like to invest. Liu Decl. ¶¶ 63-64. Accordingly, requiring Ms. Liu to return to China constitutes irreparable harm. *See Ruiz-Diaz v. United States*, No. 07-1881, 2008 U.S. Dist. LEXIS 79217 at *7 (W.D. Wash. Aug. 21, 2008) ("The Court is hard-pressed to imagine a more traumatic and irreparable harm than being uprooted from your job, home, and community for an undetermined length of time.").

**FISHERBROYLES, LLP**
145 S. Fairfax, 2nd Floor
Los Angeles, CA 90036
Telephone: (949) 290-9631

**III.    BALANCING THE EQUITIES TIPS IN MS. LIU'S FAVOR AND GRANTING THE INJUNCTION IS IN THE PUBLIC'S INTEREST.**

When analyzing this factor, this Court analyzes "the competing claims of injury and must consider the effect on each party of the granting or withholding of the requested relief." *Winter*, 555 U.S. at 24. Stated differently, balance of the equities is "jargon for choosing between conflicting public interests." *Youngstown Sheet & Tube Co. v. Sawyer*, 343 U.S. 579, 609 (1943) (Frankfurter, J., concurring). Furthermore, because the injunction is sought against the government, the balancing of the harms to the opposing party and weighing the public interest merge into one factor. *See Nken*, 556 U.S. at 435. Thus, for this factor, this Court should also analyze the public consequences of granting the requested injunction. *See Weinberger v. Romero-Barcelo*, 456 U.S. 305, 312 (1982).

The public has an interest in both the fair and efficient administration of its immigration laws. *See Nken*, 556 U.S. at 436. This includes the public's interest in ensuring that people are not wrongfully removed. *See id*. The public also has an interest in the government adhering to the rules of the APA. *See Azar*, 911 F.3d at 581.

Ms. Liu is entitled to the good-faith investor protections. It would be against the public interest to require Ms. Liu to return to China. This is because doing so violates the statutory mandate to the Secretary Noem and Director Edlow to debar and terminate the Non-Federal Defendants and recognize Ms. Liu as a good-faith investor. *See Ariz. Dream Act Coal.*, 757 F.3d at 1069 ("It is clear that it would not be equitable or in the public's interest to allow the state…to violate the requirements of federal law.") (ellipses in the original). Furthermore, as established *supra* at 8-9, the Secretary has a duty to debar and terminate AGRC, Canyon Partners I, and Canyon Partners II for failure to pay AGRC's annual fee and for failure to file reports. The

**FisherBroyles, LLP**
145 S. Fairfax, 2nd Floor
Los Angeles, CA 90036
Telephone: (949) 290-9631

Secretary also has a duty to ensure that the Turcos are not involved with AGRC, JMIG, Canyon Partners I, and Canyon Partners II because courts have found that they committed fraud. *See supra* at 13-14. Accordingly, it is in the public's interest that the Federal Defendants abide by congressional mandates.

## IV.    THIS COURT SHOULD WAIVE THE BOND REQUIREMENT UNDER FED. R. CIV. P. 65(C).

This Court has "wide discretion" to waive the security bond requirement under Fed. R. Civ. P. 65(c). *Conn. Gen. Life Ins. Co. v. New Images of Beverly Hills,* 321 F.3d 878, 882 (9th Cir. 2003). This is especially true where, as here, "there is no evidence the [Defendants] will suffer damages from the injunction." *Id*. This Court may also waive the bond requirement where, as here, "the likelihood of success on the merits…tips in favor of a minimal bond or no bond at all." *People ex rel. van de Kamp v. Tahoe Regional Plan*, 766 F.2d 1319, 1326 (9th Cir. 1985). Lastly, even if this Court rules that a bond is required, the bond should be minimal.    *Barahona-Gomez v. Reno*, 167 F.3d 1228, 1237 (9th Cir. 1999).

## CONCLUSION

For the foregoing reasons, this Court should grant the requested injunction.

FisherBroyles, LLP
145 S. Fairfax, 2nd Floor
Los Angeles, CA 90036
Telephone: (949) 290-9631

Dated: March 14, 2026

Respectfully submitted,


_____/s/ Rob L. Phillips____


Rob L. Phillips
FisherBroyles, LLP
California Bar Number 175354
145 S. Fairfax Ave., 2nd floor
Los Angeles, CA 90036
Direct: (949) 290-9631
rob.phillips@fisherbroyles.com

Shawn T. Sheehy
FisherBroyles, LLP
D.C. Bar Number 90002670
*Admitted Pro Hac Vice*
1200 G Street NW.
Suite 800
Washington, D.C. 20005
Direct: 202-258-0741
shawn.sheehy@fisherbroyles.com

He Xian
FisherBroyles, LLP
Michigan Bar Number P81366
*Pro Hac Vice* forthcoming
400 Renaissance Center, Suite 2600
Detroit, MI 48243
Direct: 678-539-9029
he.xian@fisherbroyles.com


*Counsel to Plaintiff Ms. Jing Liu*

## CERTIFICATE OF COMPLIANCE

The undersigned, counsel of record for Plaintiff Jing Liu, certifies that this brief contains 6,919 words, which complies with the word limit of L.R. 11-6.1.

March 13, 2026

/s/ Rob L Phillips
Rob L. Phillips

## **CERTIFICATE OF SERVICE**

The undersigned, counsel of record for Plaintiff Jing Liu, certifies that the foregoing was served on all Defendants by Electronic Mail to the following electronic mail addresses:

Daniel A Beck
Assistant United States Attorney
United States Attorney's Office,
Central District of California
300 North Los Angeles Street,
Suite 7516
Los Angeles, CA 90012
Tel: (213) 894-2574
Email: Daniel.Beck@usdoj.gov

James Turco:
jturco@agrcusa.com

Margaret Cheng Turco
mturco@agrcusa.com

March 14, 2026

/s/ Rob L Phillips
Rob L. Phillips